Dorothy Shepherd sued her employer, Summit Management Company, Inc. ("Summit"), on April 23, 1996. She alleged that Summit had discriminated against her on the basis of her race with respect to various aspects of her employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e); she also alleged violations of 42 U.S.C. § 1981 and 1981A, and she stated a state-law claim alleging the tort of outrage. Pursuant to Summit's motion, and after a hearing, the trial court entered a summary judgment for Summit as to all of Shepherd's claims on December 12, 1997. Shepherd appealed, and this court affirmed the trial court's judgment in Shepherd v. SummitManagement Co., 726 So.2d 686 (Ala.Civ.App. 1998). Her subsequent application for rehearing was overruled and her petition for writ of certiorari to the Supreme Court of Alabama was denied on December 18, 1998.
On December 24, 1997, Summit filed a motion for attorney fees as the prevailing party. On April 13, 1999, after the time for a petition for writ of certiorari to the Supreme Court of the United States had expired, Summit renewed its motion for attorney fees. The parties entered a joint stipulation on May 26, 1999, that the total amount of Summit's attorney fees, *Page 1112 
$45,550.59, and the hourly rates of the attorneys for Summit were reasonable. On May 28, 1999, after an evidentiary hearing, the trial court entered the following order on the circuit court's case action summary sheet:
 "This cause came on to be heard at the time scheduled for the Defendant to prove attorney's fees. The Court finds that the plaintiff's action in this case was frivolous, unreasonable, without foundation and quite possibly even brought in bad faith. The Court determines the amount of attorney's fees and costs due the defendant to be $45,550.59 and assesses that amount against the Plaintiff. Costs of this action are taxed to the Plaintiff."
Shepherd appealed to the Supreme Court of Alabama; that court transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975.
With respect to the facts surrounding Shepherd's claims, we quote from our opinion on appeal from the summary judgment on those claims:
 "Shepherd, a black female, began working for Summit Management Company, Inc., (`Summit'), on June 27, 1994, as a housekeeper at Wood Springs, one of the apartment complexes managed by Summit. Shepherd found out about the housekeeping position by telephoning Wood Springs and speaking with Lisa Springer, the assistant manager, who informed Shepherd of the opening. Shepherd went to Wood Springs, completed an application, and was interviewed by Springer. A couple of days later, Shepherd was interviewed by Sara Fredericks, property manager of Wood Gardens, another apartment complex managed by Summit. The next day Shepherd returned to Wood Springs and Springer offered her the housekeeping position. Her starting pay rate was $6.25 an hour plus a $150 monthly bonus. On December 2, 1994, her pay rate was increased to $6.56 an hour.
 "Shepherd's duties as a housekeeper included cleaning the leasing office before 9:00 a.m.; cleaning the laundry room, fitness center, bathrooms, and model apartment; checking the guest apartment to see if it needed cleaning; and preparing vacant apartments for new tenants. When Shepherd started working at Wood Springs, her immediate supervisor was Jody Phillips, the maintenance supervisor. In approximately May 1995, Wood Gardens and Wood Springs swapped maintenance supervisors, so that Jody Phillips was replaced as maintenance supervisor by the Wood Gardens maintenance supervisor, Charles English.
 "Assuming that Shepherd's allegations are true, in approximately May 1995, Springer radioed Shepherd and asked her to report to the office. When Shepherd arrived at the office, Springer informed her that she needed to clean a guest apartment for a resident. Shepherd radioed English from the office to tell him she needed to clean the guest apartment before she could finish cleaning a vacant apartment. English came to the office and, according to Shepherd, he yelled at her and they eventually had a discussion.
 "About two weeks after this incident, Shepherd received a `personal improvement plan' (`PIP'), which apparently is Summit's terminology for a written warning. The PIP, dated June 8, 1995, states:
 "`1. Desired areas of improvement or shortcomings in job performance are identified below:
 "`(1) Attitude — not talking to [English] (ignoring him) *Page 1113 
 "`(2) Job performance — speed at which units are completed
 "`2. In order to correct these deficiencies, the attached Action Plan must be completed. The following items should be included in your Action Plan:
 "`Attitude, have a business relationship with [English] — teamwork.
 "`Job performance — work with [English] on completing units at a more effective speed.
"`3. Associate's Comments:
 "`I feel [English] has a very bad attitude himself, as he says he's the MFIC (if you know what that means). I don't like being rushed to do my job if I'm going to do it well. I'm sorry if I take my time doing so, but that's the way I work. It's not the quantity, it's the quality.'
 "The PIP was signed by Shepherd, English, and Clements. An action plan dated June 9, 1995, and signed by Shepherd, English, and Clements was attached to the PIP. It provided that Shepherd was to meet with English every morning and afternoon, and it instructed her to complete units at `a pace that is expected.'
 "English admitted referring to himself as `the MFIC,' but claimed that he did so only once in a joking manner. He was never disciplined for making this remark.
 "Shepherd testified that, after receiving the PIP on June 8, she reported to English each morning. However, she received another PIP on June 16, 1995. She testified that approximately one week before receiving the second PIP, she and English had another altercation. According to Shepherd, she went to English on a Friday and asked him what work he wanted her to do in a unit that was to be cleaned by a contract cleaner. In response to her question, English said something to the effect that `that's why I don't like niggers.' He then got in his car and drove to the office. About an hour later, Clements asked Shepherd to come to the office. In the office, Shepherd received a second PIP, which stated that her attitude had not improved since her June 8 PIP and that she refused to be courteous to her supervisor and to cooperate. It instructed her to improve her attitude and working relationship by June 30, 1995, or else face possible termination. Shepherd refused to sign the PIP but did write on it that she had discussed the problems with Clements. Shepherd told Clements that English had an attitude problem, that he had made comments to her regarding her race, that she did not want to be treated like a slave, and that English had told her that `sometimes you have to be treated like slaves.' She testified that English had made this remark in response to her statement to him that she was not a slave and could not be treated like one.
 "During this period, Shepherd was seeking to move from her housekeeping position to a leasing position. She testified that when she was hired, Springer and Fredericks had informed her that Summit had a policy of promoting from within the company. Shepherd testified that in June 1995, she discovered that a part-time position was available in leasing at Wood Gardens. She informed Clements that she would like to move into a leasing position, and that Clements told her she would have to complete an `interest analysis,' a type of personality/job-placement test required by Summit. Shepherd testified that she completed the analysis and that she was allowed to see only a faxed copy of the results. She testified that Clements did *Page 1114 
not show her the `hard copy' until after the leasing position had been filled. The record contains a faxed copy of the analysis results, dated August 21, 1995, and with a fax stamp showing the same day. The consulting service that evaluated the analysis recommended Shepherd for a leasing position, finding that she should achieve above-average productivity.
 "Shepherd testified that Clements told her she would inform Sara Fredericks at Wood Gardens that Shepherd was interested in the part-time position there, but that when Shepherd telephoned Fredericks, Fredericks informed her that Clements had never informed her of Shepherd's interest and that the position had already been filled. On August 3, 1995, Kevin Hodges applied for a leasing position at Wood Springs. This position was created by the resignation of Lisa Springer, assistant manager of Wood Springs. Hodges was hired and his first day of work was August 29, 1995; the exact date he was hired is not clear from the record. Also in August 1995, Phillips and English swapped positions again, so that Phillips resumed his position as maintenance supervisor at Wood Springs and English went back to Wood Gardens.
 "On August 31, 1995, Shepherd submitted a resignation letter, which stated:
 "`This is to inform you that I am resigning from the position of housekeeper as of today with my last day being Sept. 8th. Reasons being: # 1 I feel that I will never be able to advance with this company due to the fact that 4 positions as leasing has [sic] come and gone and I was never informed that there were any, even though Summit has such a great promotion policy. I have enjoyed working here and has [sic] no animosity towards anyone, even though I feel that management thinks I'm only capable of being a cleaner due to the situations. Being, I've heard through other associates that they were offered positions as soon as they came available and that they never had to ask about them or apply for them and I feel this policy should apply to me also, so I feel kind of discriminated against. And that also applies to the comment that Terry Danner made to me during a conversation from one of his visits (that will always bother me).'
 "Danner was Summit's regional manager. Shepherd explained that during [Danner's] visit in the spring of 1995, she had informed him that she wanted to move into leasing, and he said that he had known of only one housekeeper to become a leasing representative. She had then asked if he was implying she could not do the job, and he stated that that was not his implication. He recommended that she discuss it with Clements and also asked if she had considered moving into a maintenance position.
 "After Shepherd resigned, but before her last day at work, she asked Clements if she could revoke her resignation. Clements met with Phillips and they decided that they would not allow Shepherd to revoke her resignation. They decided to contract with an independent cleaning service rather than to rehire Shepherd or hire another housekeeper.
 "Shepherd filed a complaint with the Equal Employment Opportunity Commission. On January 22, 1996, the EEOC issued Shepherd a right-to-sue letter in which it stated that Shepherd was not qualified for the position she sought, that she did not apply for the position, and that her claims of constructive discharge and retaliation were without merit. The letter also stated that the EEOC did not believe it was likely *Page 1115 
that any further investigation would result in a finding of a violation."
726 So.2d at 688-91.
In this appeal, Shepherd argues that the trial court abused its discretion in regard to the award of attorney fees. The trial court's authority awarding attorney fees is provided in42 U.S.C. § 2000e-5(k):
 "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."
The United States Supreme Court discussed the limits on the trial court's discretion in awarding attorney fees under § 2000e-5(k), in Christianburg Garment Co. v. EEOC, 434 U.S. 412
(1978). In Christianburg, the Court chose a middle path between the prevailing party's argument that the trial court could award attorney fees in its discretion subject only to the limitation that the award not be unjust, and the losing party's argument that the trial court could award attorney fees only after it had determined that the action had been brought in bad faith. After providing a detailed analysis of analogous provisions in other federal statutes and of the legislative history of § 2000e-5(k), the Court stated:
 "[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense."
434 U.S. at 701. The Court also noted some particular considerations for applying these standards:
 "In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."
Id. at 700-01.
The trial court's order awarding attorney fees in this case plainly tracks the language in Christianburg. However, the gist of Shepherd's argument is that the trial court erred because, she says, her claim was not frivolous. Shepherd first argues that her claim is evidently not frivolous because Justices Kennedy and Cook dissented from the denial of her petition for a writ of certiorari in the appeal of the original claims. She cites no authority supporting this argument in the context of the denial of a petition for certiorari. Moreover, we note that the law is settled that the Alabama Supreme Court's denial of a petition for a writ of certiorari is not legal precedent concerning any consideration of the merits of the underlying case. *Page 1116 Beesley v. Hartford Fire Ins. Co., 717 F. Supp. 781,opinion supplemented, 723 F. Supp. 635 (N.D.Ala. 1989);Ex parte Cason, 515 So.2d 725 (Ala. 1987); and Brownv. State, 294 Ala. 241, 314 So.2d 721 (1975). We infer from this settled authority that a dissent to the denial of a petition for a writ of certiorari is equally lacking in precedential value as to the merits of the underlying appeal, and we reject this portion of Shepherd's argument.
Standards for assessing whether a federal civil-rights claim is frivolous, under the principles of Christianburg, were set out in Sullivan v. School Board of Pinellas County,773 F.2d 1182 (11th Cir. 1985). In that case an assistant school superintendent sued her school board under the Civil Rights Act, alleging that her dismissal was based on her coworker's prejudices against her sex and religion. The Eleventh Circuit first discussed the conclusions of earlier cases in determining whether a claim was frivolous, and then noted the important general factors to be considered in the usual case:
 "Cases where findings of `frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a Fed.R.Civ.P. 41(b) motion for involuntary dismissal. In these cases, the plaintiffs did not introduce any evidence to support their claims. E.g., Beard v. Annis, 730 F.2d 741 (11th Cir. 1984); Jones v. Dealers Tractor and Equipment Co., 634 F.2d 180 (5th Cir. 1981); Church of Scientology of California v. Cazares, 638 F.2d 1272 (5th Cir. 1981); Harris v. Plastics Manufacturing Co., 617 F.2d 438 (5th Cir. 1980). In cases where the plaintiffs introduced evidence sufficient to support their claims, findings of frivolity typically do not stand. E.g., White v. South Park Independent School District, 693 F.2d 1163 (5th Cir. 1982); Plemer v. Parsons-Gilbane, 713 F.2d 1127
(5th Cir. 1983).
 "Factors considered important in determining whether a claim is frivolous also include: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. See, e.g., E.E.O.C. v. Kimbrough Investment Co., 703 F.2d 98, 103 (5th Cir. 1983); Jones, 656 F.2d at 1146. While these general guidelines can be discerned from the case law, they are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis."
773 F.2d at 1189.
In assessing whether the trial court was within its discretion in finding that Shepherd's claims were frivolous, we note that this court has already discussed each of Shepherd's claims in detail and determined that the summary judgment for Summit was correctly entered as to each of those claims. With respect to the first factor in Sullivan, we conclude that Shepherd did not establish a prima facie case as to any of her claims. Further, Shepherd did not meet the third factor in Sullivan, because a trial on the merits was not held. Finally, we note that Summit never made any offer of settlement regarding Shepherd's claims. Thus, all of the factors in Sullivan support the conclusion that the trial court was within its discretion in awarding attorney fees to Summit.
However, Shepherd also argues that Walker v. NationsBankof Florida, N.A., 53 F.3d 1548 (11th Cir. 1995), requires a reversal in this present case, notwithstanding the Sullivan
factors. In Walker, the court stated
 "We have held that a plaintiff's claim should not be considered groundless or *Page 1117 
without foundation for the purpose of awarding fees to a prevailing defendant when the claims are meritorious enough to receive careful attention and review. Busby v. City of Orlando, 931 F.2d 764, 787 (11th Cir. 1991) (citing O'Neal v. Dekalb County, Georgia, 850 F.2d 653, 658 (11th Cir. 1988))."
53 F.3d at 1559. Shepherd contends that in light of this court's "careful attention" given to her appeal in Shepherd, supra, her claims cannot be considered frivolous. However, in Walker, the district court had denied the defendant's motions for summary judgment on two separate occasions before entering a judgment in favor of the defendant. We conclude that the circumstances inWalker distinguish it from the case at hand and do not compel the conclusion that the trial court in this case abused its discretion.
Finally, we consider Shepherd's ultimate contention, that the trial court abused its discretion in awarding attorney fees because, she says, the record contains evidence of racial discrimination. Shepherd relies on Montgomery v. Yellow FreightSystem, Inc., 671 F.2d 412 (10th Cir. 1982), which held that an award of attorney fees, under § 2000e-5(k), for the costs of the appeal, was not warranted, because the record contained evidence of discrimination. We note that the court in Montgomery upheld the trial court's imposition of costs on the plaintiff, and we note that Montgomery is further distinguishable on the ground that the facts of this case support no inference that Shepherd was discriminated against because of her race.
As the EEOC first determined; as the trial court later determined in Shepherd's original lawsuit; and as this court concluded on appeal, after "viewing the facts in a light most favorable to [Shepherd]," Long v. Jefferson County,623 So.2d 1130 (Ala. 1993), Shepherd never presented facts that would support a claim of discrimination under the Civil Rights Act.Shepherd, supra. Accordingly, we conclude that the trial court did not abuse its discretion by awarding attorney fees.
The trial court's judgment is affirmed.
AFFIRMED.
All the judges concur.