982 So.2d 527 (2007)
Ex parte MONTGOMERY COUNTY DEPARTMENT OF HUMAN RESOURCES et al.
(In re Matter of L.H.)
Montgomery County Department of Human Resources et al.
v.
Beverly Howard.
2060668.
Court of Civil Appeals of Alabama.
September 28, 2007.
*528 Troy King, atty. gen., and Sharon E. Ficquette and Felicia M. Brooks, asst. attys. *529 gen., Department of Human Resources, for Montgomery County Department of Human Resources.
Shannon L. Holiday of Copeland, Franco, Screws & Gill, P.A., Montgomery, for guardian ad litem, Beverly Howard.

PETITION FOR WRIT OF MANDAMUS
MOORE, Judge.
The Montgomery County Department of Human Resources ("the Montgomery County DHR"), the Alabama Department of Human Resources ("the Alabama DHR"), Assistant Attorney General Sharon E. Ficquette, and Assistant Attorney General Felicia M. Brooks (hereinafter collectively referred to as "the petitioners") petitioned this court for a writ of mandamus directing the Montgomery Juvenile Court to, among other things, vacate its order awarding attorney fees and granting injunctive relief against Ficquette and Brooks. The petitioners alternatively sought to appeal the order, pursuant to Rule 4 or 5, Ala. R.App. P. We review the award of attorney fees pursuant to the petition for a writ of mandamus; we grant the petition in part, deny the petition in part, and issue the writ. We review the portion of the order granting injunctive relief by an appeal of right, pursuant to Rule 4; we reverse and remand.

Facts and Procedural History
On May 2, 2002, the Montgomery County DHR filed in the Montgomery Juvenile Court a complaint alleging that L.H. was dependent, a custody affidavit, and a petition seeking legal custody of L.H. The court issued a juvenile pick-up order and placed L.H. in the custody of the Montgomery County DHR. Beverly Howard was appointed as the guardian ad litem for L.H. In April 2006, the director of the Montgomery County DHR contacted Ficquette regarding his concerns about Howard's representation of several children whom she had been appointed to represent. On October 2, 2006, the petitioners filed with the presiding judge of the Montgomery Juvenile Court a consolidated motion to remove Howard as the guardian ad litem in several juvenile cases in which the Montgomery County DHR was involved. The petitioners attached evidentiary materials, including a transcript of a hearing in a juvenile proceeding. The certificate of service indicated that the transcript was sent to only Howard and the presiding judge. On October 13, 2006, the presiding judge entered an order denying the motion to remove and instructing the petitioners that a motion to remove would have to be filed in each individual case and would have to include allegations specific to that case in order to provide the guardian ad litem an opportunity to respond appropriately.
Thereafter, on November 3, 2006, the Montgomery County DHR and the Alabama DHR (hereinafter collectively referred to as "DHR"), by and through their attorneys, Ficquette and Brooks, filed a motion to remove Howard as the guardian ad litem in the underlying action in the juvenile court  case no. JU-02-465.02. In support of the motion, DHR alleged:
"1. That [the Alabama DHR] and [the Montgomery County DHR] has filed a bar complaint with the Alabama State Bar against attorney, Beverly Howard for various concerns and multiple cases in juvenile court in Montgomery County.
"2. It was believed that during the investigation of the said complaint, . . . the juvenile cases involving Beverly Howard could proceed without what [DHR] considers actions of misconduct by Ms. Howard.

*530 "3. Due to the gravity of Ms. Howard's recent retaliatory actions as well as actions impacting children in its permanent or temporary legal custody, this agency's ability to work with children in its custody is being compromised. DHR is legally required by R.C. v. Walley Consent Decree and Alabama law to provide appropriate services to children and their families. ALA. CODE § 12-15-71 (1975 and Supp.2005).
"4. In the above styled case, it is believed that Ms. Howard gave the child a directive to misrepresent to the court that Clarice Slayton [a DHR social worker] . . . [had not] been providing assistance to the child and admonished the child for not following the directive. The affidavit of Ms. Slayton is attached. Ms. Howard's actions are inappropriate and do not serve the best interest of the child that she is representing. Such conduct is clearly retaliatory in an effort to have the agency viewed negatively by the Court and discredit the social worker.
"5. [DHR] understands the severity of removing Ms. Howard from these cases. However, since the filing of the bar complaint, it is believed that Ms. Howard will engage in such retaliatory conduct as in this case against the agency that has impacted the child in this case, and Ms. Howard's conduct merits her removal from this case."
DHR attached the affidavit of L.H.'s assigned social worker, Clarice Slayton, dated November 6, 2006. Slayton testified in her affidavit that L.H. had told her that Howard wanted her to lie and say that Slayton had not been helping L.H. Slayton also testified that L.H. had told her that Howard was "mad at her."
The motion was set for a hearing, but the hearing was continued upon the guardian ad litem's motion. On January 29, 2007, DHR filed a motion for an expedited hearing, alleging the following:
"1. That the Motion to Remove Guardian ad Litem (GAL) and for appointment of new GAL filed on behalf of [DHR] was set to be heard on January 23, 2007.
"2. That Beverly Howard, the GAL filed a Motion to Continue on January 19, 2007. In the Motion to Continue, Ms. Howard indicates that she had a scheduling conflict due to another hearing being scheduled the morning of January 23, 2007.
"3. That the Motion to Remove GAL stemmed from the disclosure of the minor child, [L.H.] to her social worker, Clarice Slayton regarding Ms. Howard's directive to the said child to misrepresent to this Court that Ms. Slayton `was not helping' the child. The Affidavit of Clarice Slayton dated November 6, 2006, is attached and incorporated herein as Exhibit A.
"4. That on January 23, 2007, Ms. Slayton received two phone calls from [L.H.], who was upset due to her conversations with Ms. Howard on the said date. The first conversation occurred at 10:00 a.m. with Ms. Slayton. [L.H.] disclosed that Ms. Howard advised her that there would not be a court date until [L.H.] talked to Ms. Howard about the statements that were the basis for the motion to remove Ms. Howard. Ms. Howard asked [L.H.] why she told DHR that she (Ms. Howard) would ask her to lie in Court and [L.H.] told her it was because she did ask her to do this. [L.H.] also told Ms. Slayton that Ms. Howard stated that she (Ms. Howard) would keep [L.H.] in foster care until she was nineteen years old. Ms. Slayton advised [L.H.] to remain calm when talking to Ms. Howard and to ask direct questions about being released from foster *531 care. The Affidavit of Clarice Slayton dated January [29], 2007 is attached and incorporated herein as Exhibit [B].
"5. Later on January 23, 2007, [L.H.] left a message at 11:17 a.m. for Ms. Slayton. Slayton returned [L.H.]'s phone call. [L.H.] indicated that Ms. Howard told [L.H.] that no matter what Ben Jones (DHR Supervision), Ms. Slayton, or Mr. Benton (County Director) said, she would stay in foster care until she was nineteen years old. [L.H.] asked Ms. Slayton how to obtain a new GAL. Ms. Howard brought up an incident about [L.H.] stealing money three years ago. In addition, Ms. Howard brought up issues as to what [L.H.]'s mother had done or not done in this matter, which [L.H.] indicated she did not like.
"6. That Ms. Howard has challenged the minor child about statements she has made to her social worker, and advised the child that she will be maintained in care regardless of DHR's recommendations. The conversations resulted in the child being upset and inquiring about how to obtain another GAL.
"7. That the actions of the GAL demonstrates a clear conflict of interest in representing the minor child."
(Emphasis in original.) DHR attached the November 6, 2006, affidavit of Slayton, as well as an affidavit of Slayton dated January 29, 2007, to its motion. In Slayton's January 29, 2007, affidavit, she testified, in pertinent part:
"On January 23, 2007 at 10:00 a.m., I received a phone call from [L.H.]. [L.H.] was upset. This worker asked [L.H.] to calm down and tell her what is wrong. [L.H.] stated that Ms. Howard called her and they got into it. This worker advised [L.H.] to take a deep breath. [L.H.] stated that Ms. Howard called her today and everything was going good at first. She stated that Ms. Howard was asking questions about her living situation, school and work. This worker stated that is what she is supposed to do. [L.H.] stated that Ms. Howard asked her why she told DHR that she `Ms. Howard' asked her to lie in court. [L.H.] replied back that `you did' to Ms. Howard. [L.H.] stated that she did want to talk about that. Ms. Howard advised [L.H.] that there will not be a court date until [L.H.] talked about it. [L.H.] stated that Ms. Howard [told] her that she would keep [L.H.] in foster care until she was nineteen years old. [L.H.] stated that she tried to talk calmly with Ms. Howard but she just kept over talking her. [L.H.] stated that she told Ms. Howard that she had to go because she was getting upset. Ms. Howard told [L.H.] that if she didn't talk about it, she would be in foster care until she was nineteen and there would not be a `court.' [L.H.] stated that Ms. Howard told her that she would keep her in foster care until she was nineteen years old. [L.H.] indicated that she terminated the conversation. I advised [L.H.] to calm down and try and talk with Ms. Howard about the issues that are important to her. I also advised [L.H.] to keep calm when she is talking with Ms. Howard and ask direct question[s] such as how can she get out of foster care. I told [L.H.] that she needed to go but to call [me] if [she] had any problems.
"Later on January 23, 2007, [L.H.] left a message for me at 11:17 a.m., indicating that she needed to talk. I returned [L.H.]'s call. [L.H.] stated that she tried to talk calmly to Ms. Howard and redirect another conversation with Ms. Howard, but Ms. Howard just [kept] asking her about what she told DHR: [L.H.] stated that Ms. Howard stated to her that no matter what Ben Jones (my immediate supervise), me, or Mr. Benton *532 (Montgomery County DHR Director) indicated, she would stay in foster care until she was nineteen. [L.H.] stated that Ms. Howard asked her where she was at. [L.H.] stated that she was babysitting. [L.H.] said that Ms. Howard told her that she was not living with her mother. [L.H.] stated that she told Ms. Howard that no matter what she said or did she was going to live her life the way she wanted to she was not a little girl anymore. [L.H.] stated that Ms. Howard brought up past issues like when [L.H.] stole money three years ago. This worker advised [L.H.] that it is more important that she focus[ed] on who she is now and how much she has matured. [L.H.] stated that Ms. Howard started talking about what her mother did and didn't do. [L.H.] indicated that she did not like discussing this issue. I advised [L.H.] not to worry about all that. [L.H.] asked this worker why Ms. Howard kept asking about what she told me. [L.H.] stated that she don't even be [thinking] about that she just want to know how she could get out of foster care. [L.H.] asked this worker if she could get a new GAL. This worker stated that she was not sure how that worked. This worker asked [L.H.] if she taped the phone call. [L.H.] said no. She asked if she could tape them. This worker advised her to ask her attorney. This worker then advised [L.H.] to begin writing Ms. Howard letters, since she could not get her point across on the phone. [L.H.] asked this worker what she meant. This worker advised [L.H.] to write a letter to Ms. Howard to explain why she wanted out of care and how she wanted Ms. Howard to help her. This worker advised [L.H.] to make a copy of the letter and mail it to Ms. Howard. [L.H.] asked this worker if she had Ms. Howard's address. This worker gave [L.H.] Ms. Howard's address."
On March 22, 2007, Howard filed a motion asking the juvenile court to deny the motion to remove without a hearing. DHR responded to Howard's motion that same day. On March 23, 2007, the court held an evidentiary hearing on the motion to remove. At the hearing, L.H. testified that she had told Slayton, her assigned social worker, that she felt like Howard was trying to get her to say something that was not true  namely, that DHR was not doing anything for her.[1] L.H. testified that Howard had made her angry by bringing up things from her past and by saying that L.H. would not "get out of DHR" until she talked to Howard. L.H. stated that when she and Howard talk to each other, they end up arguing. She testified that she had expressed those concerns to Slayton and had asked Slayton about having another guardian ad litem appointed.
On cross-examination, L.H. testified that she had never stated to Slayton that Howard had told her to lie. She also testified that some of her frustration with Howard arose from Howard's not recommending that she be emancipated and from Howard's asking her why she had run away from her placement.
Slayton testified that L.H. had left her foster-home placement and had gone to stay with her mother without permission from the Montgomery County DHR. Sometime after that, however, Slayton spoke with L.H.'s mother and asked if *533 L.H. had been staying with her. She determined that L.H.'s mother had agreed for L.H. to stay with her. Slayton then took L.H.'s belongings to the mother's home and did a home evaluation. Slayton testified that, at a prior hearing, she had reported to the court that L.H. had left her placement without permission, but she did not report that she had later taken L.H.'s belongings to her mother's home and had allowed L.H. to stay there.
On April 2, 2007, Howard filed a motion for sanctions and for injunctive relief against Ficquette and Brooks, stating the following:
"COMES NOW the Guardian ad Litem in this case and moves this Court to impose sanctions against [DHR]'s attorneys, to order [DHR] to cease and desist from seeking to have Ms. Howard removed from representing her clients in this lawsuit, to order [DHR] to cease and desist from interfering with her relationship with her clients, and otherwise to discipline the attorneys representing DHR in connection with their attempts to have her removed as GAL [guardian ad litem] from this and other cases. As grounds for this Motion, the Guardian ad Litem shows as follows:
"The purpose of this filing is to try to bring an end to DHR's attorneys' full-scale campaign to discredit, embarrass, harass and intimidate Ms. Howard in an effort to get her removed as GAL from the dozens of cases to which she is currently appointed in Montgomery County. While DHR has seen fit thus far only to file individual motions in some of these cases, its actions indicate an intent to do so in all such cases eventually. DHR's full scale attack on Ms. Howard has cost her tremendous time, money, and effort and caused her serious emotional distress. Given the circumstances, Ms. Howard has no choice but to file this motion. She has no other recourse to stop the [DHR]'s attorneys from their campaign of harassment, intimidation, and attempts to humiliate her short of filing suit against the individual attorneys to seek damages in connection with their interference with her business relations with her clients and/or for defamation. Such a lawsuit, given the cost of such litigation and the distraction that it would create from her work is not the route that Ms. Howard would prefer, but, unless there is some relief for Ms. Howard from this Court, she will have no choice but to do so, absent a serious change in the behavior of DHR's counsel.
"Ms. Howard has not always agreed with [DHR]'s positions in dependency proceedings. DHR cannot dispute that Ms. Howard takes a more active role as GAL than many attorneys who take on these cases. As in any litigation and as with any lawyers representing opposing parties, there have been conflicts between DHR and Ms. Howard over the years. Ms. Howard has also often agreed with DHR's positions and made recommendations to the Court accordingly.
"It is one thing for [DHR] to disagree with Ms. Howard about positions she has taken, the way she expresses her positions, or even to disagree with her approach to these cases or take issue with her active involvement in ISPs [individual service plans] and other aspects of the cases that other GALs might prefer to ignore. It is quite another thing altogether, however, to mount a campaign to remove her from all of her appointed cases and to make gratuitous attempts otherwise to discredit, intimidate, harass, and embarrass her in multiple forums, as these attorneys have sought to do.

*534 "Indeed, even attempting to remove her from a single case would be an extraordinary measure for a DHR attorney  or any opposing counsel  to take. It is the Court, not DHR, that appoints the GAL. The GAL represents the interest of the child, not DHR. If DHR has a serious concern, it is certainly free to bring an issue to the Court's attention, but seeking to remove a GAL from even one case, let alone every case, is unprecedented and uncalled for. It is almost without question that DHR's attorneys have never filed such a motion where a GAL failed to do any independent investigation, to appear at ISPs, to find out where his client was, or to make any independent recommendations. Even more telling is that DHR has sought to have Ms. Howard removed before making serious, if any, efforts to address their alleged concerns with the Court and to resolve matters in any less drastic way. Their goal, short and simple, is to be rid of Ms. Howard altogether.
"The first piece of evidence showing that DHR's attorneys seek, even in addition to having her removed from her appointed cases, to humiliate, discredit, embarrass and harass Ms. Howard is their choice, before doing anything less drastic, of filing a complaint with the Alabama Bar Association. In that complaint, they seek to have Ms. Howard removed as GAL from the cases to which she has been appointed in Montgomery County. Because it is self-evident to anyone that the Alabama State Bar could not provide the DHR attorneys the relief they allegedly sought, the only reason to file that complaint was to harass, humiliate, discredit and intimidate Ms. Howard. At present Ms. Howard has spent dozens of hours responding to the long, convoluted allegations that DHR's attorneys have made in that complaint.
"Moreover, Ms. Howard has been repeatedly informed by a Bar representative that it was inappropriate for the DHR attorneys to disclose to this Court and others the existence of their complaint against her at the Bar and that the existence of the complaint was confidential. Moreover, mentioning that complaint in this Court was certainly gratuitous because the existence of an attack against Ms. Howard by them in another forum is no evidence that their attack against her in this forum is any more valid or appropriate. In short, mentioning the bar complaint in any proceedings in this Court was utterly self-serving and a further attempt by DHR's lawyers at humiliation, harassment, and intimidation.
"After taking the pointless measure of allegedly seeking to have the Bar remove Ms. Howard from the cases to which this Court appointed her, which was devastating to Ms. Howard in terms of the time it has taken to respond to the multiple charges made in the complaint and the emotional toll connected with responding to a bar complaint, these DHR attorneys turned around and filed a pleading in this Court before [Presiding] Judge Capell seeking to have Ms. Howard removed from all of her appointed cases. See Exhibit A hereto. This was, by all appearances, also intended to harass, intimidate and embarrass Ms. Howard. As Judge Capell immediately recognized, and as DHR's attorneys must have known, it was inappropriate to file a consolidated motion, as removal would only be appropriate, if ever, based on facts of a particular lawsuit. Moreover, as Judge Capell was not the judge who appointed her to any of those cases and Ms. Howard is not serving as a GAL before Judge Capell on any case, Judge Capell should *535 not, and probably could not, have removed her from those appointments.
"After undertaking these two efforts, which were pointless in every respect, except to the extent that they cost Ms. Howard and the Court and the Bar time and money and caused Ms. Howard stress, the DHR attorneys filed individual motions to have Ms. Howard removed in four cases.
"While, as Ms. Howard has always recognized, it is inappropriate and impermissible to introduce evidence from one juvenile case into another because of the confidentiality of that information, this Court can take judicial notice of the status of the proceedings that have occurred in other cases in the same Court. It is particularly appropriate to do so here, where the DHR attorneys' efforts show a pattern across cases of the same behavior which is largely, if not solely, intended to harass, intimidate and embarrass another officer of the Court. However, the undersigned is unwilling to do so without sanction of the Court and will not, therefore, do so here at this time. This case, however, is a prime example of the type of harassment, intimidation and humiliation that DHR is attempting to cause Ms. Howard. First, DHR itself created a situation, by misrepresenting the fact to this Court and the GAL as to why [L.H.] left her placement, which led to a serious misunderstanding between the GAL and [L.H.] regarding whether [L.H.] was on runaway status. She was not, but DHR had essentially reported that she was. Moreover, it is DHR here that appears to be encouraging [L.H.] to seek emancipation, which is clearly against her interest (notwithstanding that DHR withdrew its motion seeking her emancipation after the Court expressed its disapproval), and it was DHR that was using [L.H.]'s desire to be emancipated against her interest as a basis for removing Ms. Howard as GAL. DHR's behavior in this case truly constitutes the height of audacity.
"Ms. Howard and the undersigned counsel believe that this Court, in its own interest and in the interest of justice, can and should issue sanctions against the DHR attorneys who have spearheaded and driven the attacks on Ms. Howard. Likewise, or in the alternative, this Court should discipline these attorneys for their unmitigated attack on Ms. Howard and the time, money, effort, and stress that they have cost Ms. Howard in connection with defending these attacks. The State in a prior case has contended that sovereign immunity protects it from liability for money damages. However, sovereign immunity does not, and should not, protect individual attorneys who are officers of this Court from this Court's inherent jurisdiction to manage and control the behavior of those who appear before it.
"Absent sanctions or discipline of some kind, DHR will be able to harass, intimidate and embarrass any and all GALs appointed by this Court whenever those GALs are not to their liking without any repercussions. The work GALs do is not highly paid and requires much personal dedication. It will be difficult, if not impossible, for this Court to find GALs who are willing to disagree with DHR's positions, when such disagreements are called for, as they sometimes are, if the GALs will only find themselves subject to the campaign of harassment, intimidation, and embarrassment that DHR has been permitted to undertake in this case.
"In addition to, or in the alternative, Ms. Howard asks this Court to issue an order prohibiting [DHR] from filing any further motions to have her removed as *536 GAL. Should there be any circumstances that would even arguably justify her removal, the Court could and would, on its own, be able to accomplish that. Indeed, policing Ms. Howard's work is not the job of DHR's attorneys and serves merely as a distraction from their work and to the Court. If DHR wishes the Court to address any particular action of Ms. Howard, it can bring that particular action to the Court's attention and ask the Court to issue an order to address whatever problem they perceive to exist. There is no need for DHR ever to seek to have Ms. Howard removed. If, based on the Court's observations, the Court finds that Ms. Howard has a conflict of interest and should be removed, the Court can accomplish that.
"In addition, DHR's efforts to develop arguments that might justify having Ms. Howard removed from her role as GAL in these cases have involved seeking privileged information from Ms. Howard's clients. Ms. Howard would, therefore, ask this Court to issue an order prohibiting any government employee from asking the children Ms. Howard represents about privileged attorney-client communications between them and Ms. Howard. Ms. Howard would ask that this Court issue an order preventing DHR's attorneys, social workers and other DHR employees and representatives from discussing with Ms. Howard's clients any communications that have passed between them and from discussing any legal issues with them related to the case.
"WHEREFORE, Ms. Howard asks this Court to issue sanctions, undertake disciplinary measures in connection with DHR's attorneys' attack on Ms. Howard, issue an order prohibiting DHR from filing further pleadings seeking Ms. Howard's removal from this case, and issue an order prohibiting DHR employees or attorneys from prying into matters with foster care children which are privileged and confidential attorney client communications."
(Emphasis in original.) Howard did not attach any evidentiary materials to her motion.
On April 19, 2007, the juvenile court entered an order stating, in pertinent part:
"After a presentation from the State's witnesses, it is clear that attorney Beverly Howard, the Guardian ad Litem in this case, has done nothing improper. Ms. Howard relied on written statements and representations made by the DHR case worker relative to the minor child  Ms. Howard's client. It was after Ms. Howard relied upon DHR's statements and in questioning the child about DHR's statements that Ms. Howard was able to determine that the case worker's representations had been false.
"[DHR] asserted that the case worker had completed a home evaluation on the mother's home and therefore removed [L.H.] from foster care and placed her back in her mother's home. No such evaluation was filed with the Court and was certainly not a part of the record. Ms. Howard had asserted that a home evaluation was not done and, in fact, there was no home evaluation completed prior to [DHR's] placing the child back in the mother's home. DHR misrepresented the facts and circumstances to the Guardian ad Litem and to the Court. Thereafter, [the Alabama] DHR sought to have this Court remove the Guardian ad Litem.
"Based on the evidence presented by [the Alabama DHR], there exists no basis or reason for this Court to remove the Guardian ad Litem. On the contrary, it appears that it is [the Montgomery County DHR] that has failed to *537 do its job. The Motion to Remove appears to be an attempt to cover up their own wrongdoing by pointing fingers at the Guardian ad Litem.
"Ms. Howard has filed a Motion for Sanctions and Disciplinary Measures and for Certain Orders Relating to DHR's Attempts to have the Guardian Ad Litem Removed. She states that the purpose of this motion is to `. . . try to bring an end to DHR's attorneys' full-scale campaign to discredit, embarrass, harass and intimidate Ms. Howard in an effort to get her removed as Guardian ad Litem from the dozens of cases to which she is currently appointed in Montgomery County.' She moves this Court to impose sanctions against [DHR's] attorneys, to order [DHR] to cease and desist from filing motions to remove Ms. Howard, to order [DHR] to cease and desist from interfering with her relationship with her clients, and otherwise to discipline the attorneys representing DHR in connection with their attempts to have her removed as GAL. . . .
"The motions filed by attorneys Sharon Ficquette and Felicia Brooks were baseless and can only be considered frivolous, malicious and an attempt to seriously interfere with Ms. Howard earning a living as a bona fide, licensed attorney. There was not one shred of evidence produced that would give any credence whatsoever to the motion to remove Ms. Howard. This Court believes that the Motion for Sanctions is due to be GRANTED.
"Filing motions to remove a Guardian ad Litem is a serious matter and should only be done in cases where there is overwhelming evidence of bias, improper conduct by the Guardian ad Litem, or wrongdoing. None of that is present in this case. This Court believes that this motion was filed for personal reasons against Ms. Howard.
"Attorneys Sharon Ficquette and Felicia Brooks will no doubt argue that they are immune from sanctions because they are employed by the State. This Court does not believe that attorneys licensed individually to practice law by the Alabama State Bar can act with impunity simply because they work for a governmental entity.
"Clearly, the Alabama Supreme Court agrees with this Court. In Ex Parte Cranman, 792 So.2d 392, Alabama 2000, the Supreme Court held `. . . Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity (1) when the Constitution or laws of the United States or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of law.' Attorneys Ficquette and Brooks meet the requirements for personal liability as stated in number (2) above. Ex parte Cranman, supra.

"Based on the foregoing, it is hereby ORDERED as follows:
"1. That under the facts and circumstances, evidenced at the hearing on the Motion to Remove the Guardian ad Litem, this Court specifically finds that the motion filed by attorneys Ficquette and Brooks is frivolous and done for malicious purposes known only to attorneys Ficquette and Brooks.
"2. That attorneys Ficquette and Brooks are hereby prohibited from filing further pleadings in this case which seek to remove Beverly Howard as the Guardian ad Litem.

*538 "3. That DHR attorneys are hereby prohibited from breaching the attorney-client privilege between the GAL and her clients and shall cease and desist from interfering with the Guardian ad Litem in the performance of her duties.
"4. That the Court hereby awards attorney fees to the Guardian ad Litem which were made necessary because of the filing and prosecution of this frivolous motion. Attorney Shannon Holliday, who was present for the hearing, shall immediately file an itemized bill with this Court for time incurred in representing Ms. Howard in these proceedings.
"5. That monetary sanctions are hereby imposed on attorney Sharon Ficquette and attorney Felicia Brooks in their personal capacities in the above-styled case as sanctions. Attorneys Ficquette and Brooks shall pay attorney Shannon Holliday's itemized fee bill which shall be paid to Ms. Beverly Howard within 30 days of receipt of Ms. Holliday's bill. Nothing herein shall prevent [the Alabama DHR] from condoning attorneys Ficquette and Brook's malicious conduct by paying Ms. Howard's attorney fees should DHR so choose."
On April 25, 2007, the petitioners filed a motion requesting that the court alter, amend, or vacate the April 19, 2007, order and a motion to stay the order pending appeal. In support of its motions, the petitioners asserted, among other things, that, in filing and prosecuting the motion to remove the guardian ad litem, Ficquette and brooks, on behalf of the Alabama DHR, had been discharging duties imposed on a department or agency by statute, rule, or regulation and had not acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of law. They also asserted that injunctive relief was unwarranted based on the evidence presented. In support of their motion, the petitioners attached the affidavit of Tarilton Benton, the director of the Montgomery County DHR. In his affidavit, Benton testified, in pertinent part:
"I have asked for the assistance of attorneys' representing [DHR] to seek whatever relief may be available through the Courts concerning Ms. Beverly Howard's detrimental behaviors that have inhibited and interfered with the agency's ability to serve the children entrusted to our care by the Family Court of Montgomery County."
On May 1, 2007, the petitioners filed their petition for a writ of mandamus with this court; alternatively, they sought to appeal the juvenile court's order. On the same day, in a bench note, which was memorialized in an order dated May 15, 2007, the juvenile court denied the motion to stay. That order stated:
"This matter came before the Court on the Motion to Stay filed by Attorneys Sharon Ficquette and Felicia Brooks. Based on the assertions contained in said Motion, the Motion to Stay is due to be DENIED.
"[The Alabama] DHR attorneys Sharon Ficquette and Felicia Brooks were afforded due process when the Court held a hearing on their Motion to Remove the Guardian ad Litem. The Alabama Rules of Civil Procedure require that evidence in support of any motion be produced at the time of the hearing which is set for the presentation of facts, circumstances and evidence. If evidence is not produced at that time to substantiate accusations or if in fact the Court finds that the accusations are baseless, the attorneys may be subject to appropriate disciplinary action.
"Attorneys Ficquette and Brooks presented no evidence to support their *539 claims filed against the Guardian ad Litem. Appropriate sanctions were entered by this Court in the form of the requirement that the attorneys pay the Guardian ad Litem's attorney fees. (See Rule 11, [Ala. R. Civ. P.], Rule 16, [Ala. R. Civ. P.]; and Alabama Litigation Accountability Act, Code of Alabama, 1975). No due process violation is found as asserted by Attorneys Ficquette and Brooks.
"The Court notes that Attorneys Ficquette and Brooks at the hearing on their Motion to Remove the Guardian ad Litem stated that [the Alabama DHR] and [the Montgomery County DHR] are one unit. However, their Motion to Stay at Paragraph # 10 contradicts their statements made at the hearing. Paragraph # 10 states that Attorneys Ficquette and Brooks are not parties to the case above. Either the State and County Departments of Human Resources are, as they put it, `one big happy family' or they aren't. The State and County cannot be considered one unit for purposes of a hearing and notice of said hearing on one day and they are separate on a different day. The State cannot have it both ways. If the State is not a party, then Attorneys Ficquette and Brooks had no standing to file any pleadings, much less a Motion to Remove the Guardian ad Litem. Language contained in the Motion to Stay confirms this Court's previous ruling of personal liability for Attorneys Ficquette and Brooks for filing baseless, malicious, frivolous motions."
I. Petition for the Writ of Mandamus  Award of Attorney Fees

A. Standard of Review

"A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show: (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."
Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001). "[A] petition for a writ of mandamus is an appropriate means for seeking review of an order denying a claim of immunity." Ex parte Butts, 775 So.2d 173, 176 (Ala.2000).

B. Discussion

In their petition for a writ of mandamus and in their briefs in support of their petition, the petitioners argue that the juvenile court exceeded its discretion in awarding attorney fees against Ficquette and Brooks because, they say, (1) such an award is barred by state-agent immunity, 2) such an award is barred by prosecutorial immunity, and 3) the juvenile court failed to afford them due process. We find the resolution of the first issue raised by the petitioners to be dispositive.
"The long-standing legal principle of state sovereign immunity is written into Alabama's Constitution. `Article I, § 14, Alabama Constitution of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Under this provision, the State and its agencies have absolute immunity from suit in any court.'" Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 434-35 (Ala.2001) (quoting Ex parte Franklin County Dep't of Human Res., 674 So.2d 1277, 1279 (Ala.1996)). Our supreme court has held that § 14, Ala. Const.1901, prohibits both the imposition of monetary sanctions against the state and the award of attorney fees against the *540 state. See Haley v. Barbour County, 885 So.2d 783, 789 (Ala.2004) (holding that § 14 prohibited an award of monetary sanctions against a state official in his official capacity); Ex parte Town of Lowndesboro, 950 So.2d 1203, 1211-12 (Ala.2006) (holding that § 14 prohibited an award of attorney fees against a state agency).
State agents, in their individual capacities, such as Ficquette and Brooks in the present case, are entitled to the protection of state-agent immunity under the following circumstances:
"`[W]hen the conduct made the basis of the claim against the agent is based upon the agent's
"`(1) formulating plans, policies, or designs; or
"`(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"`(a) making administrative adjudications;
"`(b) allocating resources;
"`(c) negotiating contracts;
"`(d) hiring, firing, transferring, assigning, or supervising personnel; or
"`(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"`(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"`(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"`Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"`(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"`(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'"
Ex parte Butts, 775 So.2d at 177-78 (quoting Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000) (plurality opinion)).
"This Court has established a `burden-shifting' process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052; Ex parte Wood, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052; Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala.1998). `A State agent acts beyond authority and is therefore not immune when he or she "fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist."' Giambrone, *541 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000))."
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006).
In the present case, the petitioners argue that they presented evidence indicating that Ficquette and Brooks were "discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner." We agree. According to Ala.Code 1975, § 36-15-1(2), the attorney general  or his assistants  have the duty to "attend to all cases other than criminal that may be pending in the courts of this state, in which the state may be in any manner concerned." Specifically, the legal counsel for the Alabama DHR must "devote his entire time to the business of the Department of Human Resources." Ala.Code 1975, § 38-2-4. The Department of Human Resources encompasses the Alabama DHR along with the 67 county departments of human resources. See Williams v. James, 420 So.2d 773, 774 (Ala.1982).
The petitioners submitted the affidavit of Benton, the director of the Montgomery County DHR. That affidavit indicates that the actions of Ficquette and Brooks were taken in accordance with the performance of their statutory duties. Therefore, we conclude that the petitioners met their initial burden of showing that the conduct of Ficquette and Brooks in their representation of DHR fits within at least one of the categories enumerated in Ex parte Cranman and adopted by the supreme court in Ex parte Butts.[2]
Because we conclude that the petitioners made the initial showing required under the burden-shifting analysis, we must next determine if Howard met her burden of showing that Ficquette and "act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority." The juvenile court found that Ficquette and Brooks "act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority"; however, from our review of the petition, the answer, and the parties' briefs and attachments, we can find no evidence that would support a finding that Ficquette and Brooks acted in such a manner.
In fact, based on the materials before us, it appears that the only relevant evidence before the juvenile court was the affidavit of Benton and the testimony of Slayton and L.H. regarding the events that prompted the filing of the motion to remove.[3] The juvenile court found fault with the Alabama DHR's involvement in the case; however, Ficquette's and Brooks's involvement in the case fell within their statutorily prescribed duties as counsel for DHR. Further, the juvenile court found that the assertion by Ficquette and Brooks that they were not parties to the action contradicted their assertion that the Alabama DHR was a party to the action; however, it is clear that Ficquette and Brooks were simply stating that they *542 were the attorneys for one of the parties, not actual parties.
In addition, the juvenile court found that the motion was baseless and frivolous and that Ficquette and Brooks did not present a "shred" of evidence in support of the motion to remove and that they should not have moved to remove the guardian ad litem without having "overwhelming" evidence of bias or improper conduct. Ficquette and Brooks, however, presented the testimony of L.H., who testified that she had told Slayton that, although Howard had never actually told her to lie, she felt like Howard was trying to get her to be untruthful. L.H. also testified that she had had difficulty communicating with Howard and that she wanted to be assigned another guardian ad litem.
Howard argues that the filing of the bar complaint was without merit and that the mention of the bar complaint in the motion to remove is a violation of the Alabama Rules of Disciplinary Procedure. Those issues are matters that, more appropriately, should be addressed by the Alabama State Bar, and we conclude that Howard's assertions do not establish that Ficquette and Brooks "act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority." Further, Howard suggests that the filing of the consolidated motion before the presiding judge of the Montgomery Juvenile Court was procedurally improper and, therefore, shows that Ficquette and Brooks "act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority." Howard cites no law stating that filing the motion with the presiding judge was improper, and, even if it was improper, we conclude that such a procedural imperfection is insufficient to show that Ficquette and Brooks "act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority."
Based on the absence of evidence that Ficquette or Brooks "act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority," we conclude that Howard failed to meet her burden in overcoming Ficquette's and Brooks's state-agent-immunity defense. Accordingly, the juvenile court erred in awarding attorney fees against Ficquette and Brooks. Therefore, we grant the petition as to this issue and direct the juvenile court to vacate its order awarding attorney fees to Howard.
The petitioners have also raised the following issue: whether the juvenile court erred in denying their motion to remove the guardian ad litem. Because the petitioners did not present any argument or citations to authority relating to that issue, we do not address that issue and the petition is denied as to that issue. See Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 972 (Ala.2007).

II. Appeal  Injunctive Relief

A. Standard of Review

Because the juvenile court's order, insofar as it granted injunctive relief, effectively imposed a permanent injunction, the proper standard of review is de novo review. TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999). An order granting a permanent injunction is appealable by an appeal of right, pursuant to Rule 4, Ala. R.App. P. See Robinson v. Computer Servicenters, Inc., 346 So.2d 940 (Ala.1977); and Ala.Code 1975, § 12-22-6.

B. Discussion

"To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, *543 and that granting the injunction will not disserve the public interest."
TFT, Inc., 751 So.2d at 1242.
In the present case, the juvenile court's order, insofar as it granted injunctive relief, contained three components: (1) Ficquette and Brooks were prohibited from breaching the attorney-client privilege between Howard and her clients; (2) Ficquette and Brooks were ordered to cease and desist from interfering with Howard's performance of her duties; and (3) Ficquette and Brooks were prohibited from filing further pleadings in this case seeking to remove Howard as the guardian ad litem.
With regard to the first two components, we conclude that Howard failed to "demonstrate success on the merits." Howard presented no evidence indicating that Ficquette and Brooks had breached the attorney-client privilege. In fact, when asked if she had spoken with DHR attorneys in preparation for the hearing on the motion to remove, L.H. testified that she had not. Similarly, Howard introduced no evidence indicating that Ficquette and Brooks had interfered with Howard's performance of her duties as a guardian ad litem. Other than filing the motions to remove Howard, Ficquette and Brooks have done nothing to impede Howard's representation of L.H. or any other child.
Based on the foregoing, we reverse the juvenile court's order to the extent that it issued an injunction against Ficquette and Brooks.
PETITION  GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
APPEAL  REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
BRYAN and THOMAS, JJ., concur specially.
BRYAN, Judge, concurring specially.
I fully concur with the main opinion. I write specially to note that Assistant Attorney General Ficquette and Assistant Attorney General Brooks are entitled to absolute immunity as government attorneys. It is well settled that prosecutors are entitled to absolute immunity for activities performed within the scope of their duties. See Imbler v. Pachtman, 424 U.S. 409, 422-24, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Bogle v. Galanos, 503 So.2d 1217 (Ala.1987); and Jones v. Benton, 373 So.2d 307 (Ala.1979). In Butz v. Economou, 438 U.S. 478, 515, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the United States Supreme Court concluded that absolute immunity extends to government attorneys performing certain functions analogous to those of a prosecutor. The Supreme Court stated:
With regard to the final component, we conclude, for several reasons, that the juvenile court exceeded its discretion by enjoining Ficquette and Brooks from filing further pleadings in this case seeking to remove Howard as the guardian ad litem. Injunctions against filing pleadings or motions have been upheld in Alabama and in other jurisdictions in cases in which there is a history of frivolous filings. See, e.g., Ex parte Magouirk, 804 So.2d 308 (Ala. Crim.App.2000); Stickler v. Dube, 644 A.2d 465, 468-69 (Me.1994). In the present case, however, as noted above, Ficquette and Brooks presented competent evidence in support of the motion to remove the guardian ad litem. Therefore, we conclude that the motion was not frivolous. See, e.g., Shepherd v. Summit Mgmt. Co., 794 So.2d 1110, 1116 (Ala.Civ. App.2000). Further, there is nothing in *544 the record to suggest that the motion was repetitive, i.e., based on the same set of facts as a prior motion filed in that case.[4]See, e.g., Brakke v. Rudnick, 409 N.W.2d 326, 335 (N.D.1987). Finally, the injunction was also improper because it was not "`"carefully tailored"'" to the circumstances of this case. See, e.g., Magouirk, 804 So.2d at 310 (quoting Procup v. Strickland, 792 F.2d 1069, 1072 (11th Cir.1986), quoting in turn Cotner v. Hopkins, 795 F.2d 900, 902 (10th Cir.1986)). The juvenile court did not simply enjoin Ficquette and Brooks from filing a subsequent motion to remove based on the same facts that were offered in support of the previously filed motion to remove. Instead, the court issued an overly broad order, enjoining Ficquette and Brooks from filing a motion to remove even if they learned of circumstances in the future that would justify the filing of a motion seeking Howard's removal.[5]
"We can see no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before a court. In either case, the evidence will be subject to attack through cross-examination, rebuttal, or reinterpretation by opposing counsel. Evidence which is false or unpersuasive should be rejected upon analysis by an impartial trier of fact. If agency attorneys were held personally liable in damages as guarantors of the quality of their evidence, they might hesitate to bring forward some witnesses or documents. `This is particularly so because it is very difficult if not impossible for attorneys to be absolutely certain of the objective truth or falsity of the testimony which they present.' Imbler v. Pachtman, . . . [424 U.S. 409,] 440 [(1976)] (White, J., concurring in judgment). Apart from the possible unfairness to agency personnel, the agency would often be denied relevant evidence. Cf. Imbler v. Pachtman, supra, at 426. Administrative agencies can act in the public interest only if they can adjudicate on the basis of a complete record. We therefore hold that an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence."
438 U.S. at 516-17, 98 S.Ct. 2894 (footnote omitted).
In proceeding with a child-protection action, Ficquette and Brooks fall within the broad protection afforded to certain government attorneys in Butz. Indeed, because attorneys initiating and prosecuting child-protection actions perform functions analogous to those of a prosecutor, several federal courts have afforded absolute immunity to attorneys for their actions in such proceedings. See Gray v. Poole, 243 F.3d 572, 577 (D.C.Cir.2001) (holding that "government attorneys who prosecute child neglect actions perform `functions analogous to those of a prosecutor [and] should be able to claim absolute immunity with respect to such acts'" (quoting Butz, 438 U.S. at 515, 98 S.Ct. 2894)); Snell v. Tunnell, 920 F.2d 673, 692-94 (10th Cir. 1990); Weller v. Department of Soc. Servs., 901 F.2d 387, 397 n. 11 (4th Cir. 1990); Myers v. Morris, 810 F.2d 1437, *545 1452 (8th Cir.1987), overruled on other grounds by Burns v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); and Walden v. Wishengrad, 745 F.2d 149, 152 (2d Cir.1984). Accordingly, Ficquette and Brooks are entitled to absolute immunity in this case.
I must note also that the juvenile court's actions in this case undermined Ficquette's and Brooks's ability to serve the public good as government attorneys. In the context of the absolute-privilege defense in a defamation action, our supreme court has discussed the need for attorneys and other persons involved in judicial proceedings to be able to freely perform their required functions:
"`[T]he availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives.' Supry v. Bolduc, 112 N.H. 274, 276, 293 A.2d 767, 769 (1972). In O'Barr v. Feist, 292 Ala. 440, 445, 296 So.2d 152, 156 (1974), this Court stated that the absolute privilege is `for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages.' These policy considerations apply equally to judicial and to quasi-judicial proceedings."
Webster v. Byrd, 494 So.2d 31, 35 (Ala. 1986) (emphasis added). The evidence in this case indicates that Ficquette and Brooks, acting pursuant to their supervisors' direction, were simply seeking to perform a legitimate function in the judicial process. The juvenile court's attempt to curtail their efforts, especially by enjoining them from filing any future motions to remove Howard, was well beyond the juvenile court's authority.
THOMAS, Judge, concurring specially.
I concur to reverse the juvenile court's order insofar as it enjoined Ficquette and Brooks from filing further motions to remove Howard as the guardian ad litem in this case and from seeking confidential information from the juveniles who are Howard's clients.
Although I also concur to reverse the juvenile court's order insofar as it enjoined Ficquette and Brooks from interfering with Howard in the performance of her duties as a guardian ad litem, I write specially to note that a repeat of the circumstances underlying Howard's interference claim  and similar claims  can be prevented by keeping open the lines of communication between DHR caseworkers and guardians ad litem, both of whom are charged with protecting the best interests of the juveniles at issue.
NOTES
[1] On cross-examination, Howard questioned Slayton about what services the Montgomery County DHR had provided to L.H. Slayton testified that the Montgomery County DHR had agreed that L.H. should receive independent-living services but that an appropriate program had not been located.
[2] Moreover, we agree with the petitioners' statement that the list set forth in Ex parte Cranman is not exhaustive and that "it is clear that an attorney acting on behalf of an agency must have discretion in performing his or her duties as to filing pleadings on behalf of the State."
[3] Howard submitted to this court an affidavit containing her own testimony; however, that affidavit was signed after the entry of the juvenile court's last order addressing this issue and after the petition for the writ of mandamus had been filed. Therefore, we do not consider the contents of that affidavit.
[4] Because the consolidated motion that was filed with the presiding judge of the Montgomery Juvenile Court was not denied on the merits, we do not conclude that the motion to remove was repetitive of that motion.
[5] We do not decide whether Howard has acted in any manner that would have justified her removal. We also do not mean to imply that she is likely to act in such a manner in the future.