PARKER, Justice.
Barbara Johnson appeals the judgment of the Mobile Circuit Court in favor of the City of Mobile (“the City”), the circuit court’s denial of Johnson’s motions for a continuance and a new trial, and the award of attorney fees to the City.
7. Facts and Procedural History
This case involves Johnson’s claim against the City alleging retaliation based *907 on Johnson’s several complaints and lawsuits filed against the City under Title VII of the Civil Rights Act, 42 U.S.C.- § 2000e et seq. (“Title VH”), 'and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (“the ADA”). Johnson, an African-American woman over 40.years of age, began working for the City in its Urban Development and Public Services Department in 1996. Her duties included enforcing various ordinances pertaining to parking, abandoned vehicles, swimming pools, and overgrown weeds or grass, as well as handling abatement cases. In 2006, Johnson was transferred to the City’s Department of Environmental Services and began working as an “Environmental Patrol Officer II.” As an employee of the City, Johnson was subject to the Mobile County Personnel Board (“the MCPB”) rules and policies.
Johnson has previously filed several complaints and lawsuits against the City pertaining to her employment with the City. In 2006, 2006, 2007, 2009, 2010, and 2012, Johnson filed with the Equal Employment Opportunity Commission (“the EEOC”) complaints against the City alleging various forms of discrimination. Johnson also unsuccessfully sued the City in 2007, 2008, and 2010. Johnson filed the underlying action on June 4, 2013, alleging that, in violation of Title VII and the ADA, the City retaliated against Johnson because she had filed discrimination charges against the City with the EEOC.
Workplace interactions constitute the factual basis for Johnson’s present case. Johnson’s deposition testimony indicates that in 2008 or 2009 Johnson had surgery to correct an unspecified problem with her toe. As a result of her toe surgery, Johnson was “taken off of work” for what “could have been a month.” Johnson’s time off work to recover from her toe injury was preapproved by the City, and she was paid for her time off. Once Johnson returned to work, she had to wear a boot to protect her toe, and her doctor “wanted [her] on light duty.” .Johnson’s supervisor, Terrell Washington, informed Johnson that there was no light duty available at that time so Johnson remained at home on paid leave. Once Johnson returned to work, Johnson was ordered by her physician to wear a certain kind of shoe that did not comply with the City’s dress code. The City required Johnson to wear black shoes, but her physician-prescribed shoes were white. Washington informed Johnson that her physician-prescribed shoes were not in compliance with the City’s dress code but allowed Johnson to wear the white physiciamprescribed shoes until her toe had completely healed. Johnson’s trial testimony states, in pertinent part:
“Q. So you continued to wear the white shoes at work?
“[Johnson:] That’s correct.
“Q. Until you healed?
“[Johnson:] That’s correct, with a doctor’s excuse.
“Q. And Terrell Washington let you do that, right?
“[Johnson:] With a doctor’s excuse. But he, you know, gave me the. letter. He gave me a letter indicating that I needed to change my shoes. And I gave him the doctor excuse, and I aksed (phonetic) him can I wear my shoes. I said, Terrell, just gave a doctor excuse.
“Can I still please wear my shoes with .the doctor — I just gave you a doctor excuse indicating why I can’t wear the black ones. But I went out myself and purchased some new shoes.
“Q. Which you didn’t wear until you healed?
“[Johnson:] That’s correct. Doctor’s orders.
*908 “Q. Which Mr. Washington followed?
“[Johnson:] Yes, sir.”
On May 14, 2010, Washington sent Johnson a “Letter of reprimand” for violating certain of the MCPB’s rules and policies. Washington detailed the basis for his reprimand of Johnson as follows:
“It appears that you, (Barbara Johnson, employee # 7366) assigned to Environmental Services Division, are in violation of Rule 3.2: Reports of Absence, Rule 14.2(c) conduct unbecoming an employee in public service and (j) neglect of duty.
“On April 9, 2010,1 (Terrell Washington) was called by cell phone from you (Barbara Johnson). I was informed that you would not be in for the day and you may not be in the next week. You were not sure, but you would let me know.
“From April 12, 2010, until April 16, 2010, I did not receive a call or paper work from you that you were going to be absent for the week.
“Further, investigation revealed that you had taken a doctor’s clearance to the payroll department on April 8, 2010.
“On April 20, 2010, at 3:15pm, a meeting was held in my office, present at that meeting were you (Barbara Johnson), Kathleen Padgett and myself (Terrell Washington). When asked about the rules for being off work for sick leave and where the paper work is to go, you explained that it would go under my office door or in my box on the 3rd floor. Also, when asked why this was not done, you said that you had put it in the mail for me at the payroll department. When I checked with payroll there was no mail there with my name on it. As of May 13, 2010, I have not received a doctor’s clearance from you (Barbara Johnson).
“After careful consideration of the information and the testimony offered, I conclude that you are in violation of the rules and polices of the Mobile Personnel Board as specified. Future infractions could result in more severe disciplinary action.”
Johnson subsequently received an unsatisfactory-annual-performance rating from Washington for the period ending June 8, 2010. Thereafter, Johnson employed the MCPB’s appellate process for review of her unsatisfactory-performance rating. Ultimately, the MCPB affirmed Johnson’s unsatisfactory-performance rating. In its order affirming Johnson’s unsatisfactory-performance rating, the MCPB set forth the following reasons given by Washington as to why he gave her an unsatisfactory-performance rating:
“Terrell Washington ... testified that he had given Ms. Johnson an unsatisfactory rating ... due to her ‘constant’ problems with her job performance and attitude problems. Washington ... noted that Ms. Johnson’s performance failed to meet minimum job standards. Within this annual service rating report, Ms. Johnson ‘failed to do routine work, even when instructed.’ ...
[[Image here]]
“Washington testified that he had problems with Johnson’s overall performance in carrying out assignments and getting along with other employees.... Washington testified there had been citizen complaints about her attitude when giving violations.... ”
Johnson appealed the MCPB’s decision to the circuit court, which, on August 13, 2012, ordered the City to change Johnson’s unsatisfactory-performance rating to “no lower than ‘satisfactory”’ “[b]ecause the [MCPB] did not enforce its own rules.”
An “employee-counseling record” concerning Johnson indicates that, on December 22,. 2011, which was during the *909 aforementioned appeal process, Johnson’s supervisor counseled Johnson about her job performance. The employee-counseling record indicates that Johnson’s “monthly total number” had been low and instructed her to “let the supervisor know” if she got behind in her work so that help could be given to her.
On August 14, 2010, Johnson filed a complaint with the EEOC alleging:
“I am an individual with a disability. I filed a previous charge against my employer back in 2005, because I was being paid less wages than a White, male, who was performing the same work that I was performing. That charge was based on my Race, Sex, and the Equal Pay Act. Since filing the charge with the EEOC, my supervisor, Terrell Washington, is subjecting me to retaliation which includes but is not limited too [sic], having my work scrutinized more closely than other employees; I am called into meetings very frequently and as of June 9, 2010,1 have been given an unsatisfactory service rating. Since filing the first charge I have developed a disability[ ] and I am being harassed by having Terrell Washington, violate my privacy rights by calling my doctor’s office to get medical information[1] after I have presented doctor’s excuses and being written up for having to take leave that is related to my disability, I am harassed over the dress code and have been denied a reasonable accommodation that I requested because of my disability.
“No reason has been given to me for the disparate treatment that I am receiving.
“I believe I am being retaliated against because I filed a previous charge which violates section 704(a) of Title VII of the Civil Rights Act, of 1964, as amended and in violation of The Americans With Disabilities Act of 1990, as amended.”[2]
On March 28, 2012, the EEOC issued the following “Letter of Determination” concerning the complaint Johnson filed against the City on August 14, 2010:
“Evidence reveals that [Johnson] filed several EEOC charges against the [City] and that the temporal proximity of filing the previous charges and [the City’s] actions support that [Johnson] was retaliated against as alleged. Evidence reveals that [Johnson] was disciplined more severely than her similarly situated co-workers who had not filed EEOC charges. Based on this, there is reasonable cause to believe that [Johnson] was subjected to retaliation for participating in the EEOC process and for protesting practices made unlawful by Title VII of the Civil Rights Act of 1964, as amended.”
The EEOC recommended that the parties participate in “informal methods of conciliation.” The EEOC then monitored any attempts at conciliation made by Johnson and the City.
*910 Johnson testified at trial- about the following event that occurred on April- 5, 2012:
“Uh, one incident, when I filed a complaint, April the 5th, 2012, against Mr. Washington, ’cause I had put in a complaint, um, he approached my desk. I was sitting at my desk, and he came in and threatened me and say, ‘I heard you’ve been filing complaints against me and that you’ — went over to the file cabinet. There’s a piece of paper up there. He balled up the paper, and he carné toward me and told me I better not file any more complaints- against him. Arid I was real afraid of Mr. Washington at that time ‘cause he’s about 6'5", whatever, 6'2", 6'3", something like that, and the way he was looking in,his eyes, it really scared me, and I ran. out of the office. I was scared of him.”
Johnson went-to the Mobile Police Department (“the police department”) right after the incident with Washington in order to report the encounter and, for reasons not apparent in the record, was taken by ambulance from the police department to the hospital; she also reported the incident to the City’s human resources department. Johnson revisited the police department one week later to again report the above-described incident. While at the police department, Johnson began to hyperventilate and was again taken by ambulance to the hospital but was released that same day.
The trial testimony, of Johnson’s former supervisor, Ray Richardson, indicates that Washington seemed stricter toward Johnson than other City employees under his supervision and that Johnson and Washington had a “hostile” and “adversarial” relationship. Richardson’s trial testimony also indicates that Richardson had had limited observation of Washington and Johnson since 2010.
Johnson’s deposition testimony indicates that in 2012 she had an opportunity to transfer to the police department and receive the same pay she was receiving at her position in the City’s Department of Environmental Services. Even though the pay would have been the same, Johnson’s deposition testimony indicates that she would have had to walk to perform her potential job duties with the police department and that she “couldn’t do it at the time.” Johnson stated that she was willing to transfer back to the City’s Urban Development and Public Services Department and work for her former supervisor, Richardson, but no job openings existed in that department at that time.
Johnson’s trial testimony indicates that the City maintained her compensation and employment throughout all of her legal actions against the City:
“Q. And after you filed your six lawsuits, the City continued to employ you, right?
“[Johnson:] Yes, sir.
“Q, And after you filed your EEOC claims, the City continued to employ you, right?
“[Johnson:] Yes, sir.
“Q. You’ve never been demoted, have you?
“[Johnson:] No, sir.”
On March 8, 2013, the United States Department of Justice (“the DOJ”) sent a letter to Johnson concerning the complaint she filed with the EEOC on August 14, 2010, -against the City notifying Johnson that “conciliation in this matter was unsuccessful by the EEOC.” The DOJ also informed Johnson that the DOJ would not file suit against the City but that Johnson .had the right to do so within 90 days. On June 4, 2013, within the 90-day period, *911 Johnson filed the present retaliation lawsuit against the City in the circuit court.
In her complaint, Johnson alleged that the City retaliated against her for “EEOC activity and statutory expression” under Title VII and the ADA. Johnson alleged that the City’s retaliation against her included subjecting Johnson to intentional mental' abuse, threatening behavior, 'increased scrutiny, and harsher working conditions than other employees, disciplining Johnson for wearing special physician-prescribed shoes and taking leave for a toe injury, and deceptively attempting to obtain protected medical information. Johnson sought compensatory and punitive damages. On August 14, 2013, the City moved to dismiss Johnson’s complaint by alleging that Johnson’s claims were time-barred by “the statute of limitations for § 1981 and § 1983 actions,” which, the City alleged, is two years. Johnson responded and, on August 23, 2013, the circuit court denied the City’s motion to dismiss. Consequently, on September 19, 2013, the City filed an answer to Johnson’s complaint.
On January 15, 2014, attorneys Ricardo Woods, Kristin Parsons, and Gillian Egan of the law firm Burr & Forman LLP each filed a notice of appearance on behalf of the City. On January 16, 2014, Alicia Cor-ley and Andrew Rutins, the City’s original attorneys in this case, each filed motions to withdraw from representing the City, which the circuit court granted on' January 20, 2014. Two additional Burr & Forman attorneys also appeared on the City’s behalf during this case: Atoyia Scott filed a notice of appearance on behalf of the City on February 25, 2015, and Kasee Heister-hagen filed a notice of appearance on behalf of the City on March 26,2014.
On April 24, 2014, .the City moved to strike Johnson’s punitive-damages claim, arguing that municipalities are immune from such claims as a matter of law. The circuit court granted the City’s motion on April 29, 2014.
On'June 19, 2014, pursuant to Rule 68, Ala. R. Civ. P., the City offered judgment to be entered against it in the amount of $3,000; Johnson’s acceptance of the offer of judgment would “act as a release of all claims, whether known or unknown, which [Johnson] may have against the City.” Johnson did not accept the City’s offer of judgment. ■
On September 12, 2014, the City filed a motion for a summary judgment arguing that “Johnson does not have a disability under the' definition set forth in the [ADA]; therefore her ADA claim fails as matter of law. Further, she cannot present a prima facie case for retaliation under either Title VII or the ADA.”[3] The City argued that Johnson failed to present substantial evidence to prove her prima-facie case of retaliation. Johnson replied to the City’s summary-judgment -motion, arguing that she hád, in fact, presented substantial -evidence of her retaliation. claim. The City filed a reply to Johnson’s response asserting that Johnson had failed to meet her summary-judgment burden of providing substantial evidence in support of her claims.
• On September 29, 2014, the City filed a motion in limine seeking to exclude evidence “offered by [Johnson] or her counsel regarding claims by other parties against the City,” Johnson’s medical care, and reference to the parties’ comparative .wealth; the parties agreed to the motion in limine barring this evidence.
*912 The bench trial was held on October 2, 2014. During the bench trial, the City filed a motion for a judgment as a matter of law (“JML”) at the close of Johnson’s case, which the circuit court denied. The City renewed its motion for a JML at the close of the City’s case, and the circuit court again denied it. Subsequently, the circuit court allowed Johnson to present rebuttal testimony, and, upon the conclusion of Johnson’s rebuttal testimony, the City again renewed its motion for a JML:
“[The circuit court:] [Johnson has] rested. Okay.
“[The City’s trial counsel:] Your Honor, we renew our judgment as a matter of law.
“[The circuit court:] Well, I can rule now. I can rule based on all the evidence, and I am ruling based on all the evidence, I’m ruling judgment in favor of the City on all claims and case over. Thank y’all.”
On October 2, 2014, at 12:01 p.m., after the bench trial had occurred, the circuit court issued the following order concerning the City’s summary-judgment motion: “Unfortunately, the court DENIED the Motion for Summary Judgment filed by the City of Mobile.” It appears from the past-tense wording of the circuit court’s judgment that the circuit court had denied the City’s summary-judgment motion at some time before 12:01 p.m. on October 2, 2014. However, the case-action summary does not indicate that the circuit court had entered an order on the City’s summary-judgment motion prior to this. Nor does the reporter’s transcript indicate that the circuit court denied the City’s summary-judgment from the bench prior to the commencement of the bench trial.
Also on October 2, 2014, the circuit court, following the bench trial, entered the following judgment on Johnson’s claims against the City: “Upon consideration of the testimony and evidence submitted by the parties during the trial of this matter on October 2, 2014, the court enters judgment in favor of [the City] and against [Johnson]. Costs are taxed against [Johnson].”
On October 15, 2014, the City filed a motion seeking $3,391.80 in court costs. The City argued that because the circuit court ordered that costs should be taxed against Johnson and because, “in order to avoid the unnecessary costs involved in defending this frivolous action,” the City had “submitted an Offer of Judgment to [Johnson] on June 19, 2014,” the following “costs and fees [were] reasonable and appropriate, and were incurred with regard to [defending the case]”:
[[Image here]]
Also on October 15, 2014, the City filed a motion seeking $116,892.50 in attorney fees. The City argued that a prevailing defendant is entitled to attorney fees under Title VII and the ADA if the plaintiffs claims were frivolous, unreasonable, or groundless. The City argued that “Johnson’s claims would be considered ‘frivolous’ because she failed to present any evidence *913 that would establish a prima facie case of retaliation.” The City argued that Johnson “failed to present any evidence that she suffered any materially adverse employment action or that there was any causal relationship between such adverse action and a protected activity,” which the City argued are “two of the three elements of a prima facie case for retaliation.” The City argued that, “in order to avoid the unnecessary costs involved in defending this frivolous action,” the City “submitted an Offer of Judgment to [Johnson], on June 19, 2014,” and “made an unsuccessful attempt at mediating this case with [Johnson] in May 2014.” The City stated that its trial counsel performed the following work while defending the City:
“Burr and Forman lawyers and paraprofessionals spent a total of 593.30 hours in efforts to defend the City of Mobile from Johnson’s frivolous claims, including but not limited to: preparation of responsive pleadings; conducting written discovery; review of human resources materials and documentation provided by [Johnson] in response to discovery requests; working with the EEOC to provide necessary information (where required); preparing for and conducting [Johnson’s] deposition; participation in a failed mediation attempt; drafting and arguing a motion for summary judgment; and ultimately preparing this case for trial on the merits.”
The City further stated:
“The primary professionals that performed services for [the City] on this matter are as follows:
“Kristin T. Parsons was a partner in Burr & Forman’s Labor and Employment practice group during the pen-•dency of this case. She has over a decade of experience in litigating employment matters such as retaliation cases. She supervised this matter, advised the professionals involved, and participated in mediation. Ms. Parsons has since become Associate General Counsel for Austal, USA.
“Ricardo A. Woods is a partner with Burr & Forman and is the City Attorney for Mobile. He has ten years of litigation experience and has tried numerous jury and bench trials over the course of his career. Mr. Woods directed litigation of this matter and served as the primary counsel for trial.
“Kasee Heisterhagen is an associate at Burr & Forman with over three years of litigation experience and two years of federal law clerk experience. She primarily assisted in drafting pleadings and motions and in conducting discovery, including deposing [Johnson]. She also participated in trial of this matter by preparing the City’s case in chief.
“Atoyia Scott is an associate at Burr & Forman with two years of litigation experience. She primarily assisted in document review in discovery, witness preparation, and preparation of pleadings.
“Patti Grove is a senior paralegal at Burr & Forman in the Labor and Employment group. She assisted with all aspects of the litigation with heavy focus on document management in discovery and in trial preparation.”
Woods submitted an affidavit “based on [his] own personal knowledge” in support of the City’s motion for attorney fees. Woods stated that “[a]s of October 3, 2014,” the City had “incurred $116,892.50 in attorneys’ fees in defending” against Johnson’s case and that “[b]ased upon [his] years of legal practice and knowledge of the legal community, the fees charged by [Burr & Forman] are customary and typical of those charged by others in the legal community.” Woods stated that a “reasonable amount of time was expended by *914 the [City’s] counsel to defend this action” and that “[c]ounsel and paralegals for the [City] expended 593.30 hours in defense of this matter.”
The City’s motion for attorney fees was filed at 12:00 p.m. and Johnson’s three attorneys of record were served with the City’s itemized court costs and attorney-fee requests. Also on October 15, 2014, at 2:07 p.m., the parties were informed that a hearing on the City’s request for court costs and attorney fees was set for October 31, 2014, That same day, at 2:36 p.m., one of Johnson’s attorneys, James Harred, moved to withdraw his representation of Johnson on the basis that Johnson had fired Harred on or about October 6, 2014; the circuit court granted Hatred's motion on October 16, 2014. On October 17, 2014, Johnson’s remaining attorneys, Terrell McCants and Jeffrey Bennitt, also moved to withdraw from representing Johnson on the basis that Johnson had fired them on or about October 6, 2014. On October 21, 2014, the circuit court granted McCants’s and Bennitt’s motions to withdraw; Johnson was without legal representation at this point.
; On October 31, 2014, the parties were informed that the hearing on the City’s requests for court costs and attorney fees had been moved to November 21, 2014. Later on the same day, Johnson filed a pro se motion for a new trial pursuant to Rule 59(a), Ala. R. Civ. P., arguing'that she presented sufficient evidence to support her claim, that there was an “irregularity of the proceedings” concerning certain witnesses Johnson subpoenaed, that the -circuit court did not enforce the motion in limine mentioned above, and that the City failed to rebut- the evidence Johnson presented. The City filed a response to Johnson’s postjudgment' motion on November 7,2014.
The circuit court notified the parties that arguments on Johnson’s pro-se post-judgment motion and the. City’s motions for court costs and attorney fees would be heard on November 21, 2014. According to Johnson’s appellate brief, on November 18, 2014, Johnson moved for a continuance of the hearing on the City’s requests for court costs and attorney fees and Johnson’s motion for a new trial; the circuit court denied Johnson’s motion for a continuance.
On November 21, 2014, the circuit court denied Johnson’s motion for a new trial. That same day, the circuit court entered the following order, granting, in part, the City’s motion for court costs:
“The [City’s] Motion to Tax Costs is GRANTED IN PART.- The cost of the videotape of [Johnson’s] deposition is denied, and the mediation cost is denied. The rest of the costs sought are proper and taxable.
“Therefore, [the circuit court] ordered that costs in the amount'of $2,384.32 are taxed against ... Johnson.”
(Capitalization in original.) Later that day, the circuit court also entered the following order granting the City’s motion for attorney fees:
“This matter coinés before the court on a Motion and Application for Attorney Fees filed by the [City]. The City prevailed in this case after a bench trial, and the City seeks to shift its attorney fees to [Johnson], on the basis that Johnson’s-claims were ‘frivolous, unreasonable or groundless.’ The court agrees that Johnson’s claims were frivolous, unreasonable or groundless. The court denied the City’s motion for summary judgment, primarily because it was filed within three weeks of trial, and the court denied the City’s motions for judgment as a matter of law in order to give Johnson a full opportunity- to be *915 heard on the trial date. It was clear very early in the trial that Johnson’s claims were baseless. Although the court is loathe to shift attorney fees to a losing plaintiff, the facts in this case justify such shifting based on the authority cited by the City. The City submitted proof that its reasonable attorney fees for defending this case equaled $116,892.50.
“Accordingly, the court enters JUDGMENT in favor of the [City] and against [Johnson] in the amount of $116,892.50.”
(Capitalization in original.)
On December 20, 2014, Johnson’s new attorney, Carroll Ogden, filed a notice of appearance and a motion to reconsider the award of attorney fees, which the circuit court denied on January 14, 2015. Johnson appealed.

II.. Discussion

A. Johnson’s Retaliation Claims

We will first consider Johnson’s arguments concerning the circuit court’s judgment on the merits of her retaliation claims under Title VII and the ADA against the City.[4] Johnson’s argument is difficult to discern. It appears that Johnson essentially disagrees with the circuit court’s' ruling that she failed to present sufficient evidence to support her claims. In support of her argument, Johnson directs this Court’s attention-to several facts and concludes that consideration of those facts demonstrates “that the [circuit] court was clearly erroneous when it ruled for the City.” Johnson’s brief, at p. 36.- Johnson argues that she presented prima facie evidence in support of her claims and that “[a] search of the record and trial transcript does not reveal where [the] City controverted the retaliation and harassment experienced by ... Johnson.” Id. The City argues that the circuit court properly held that Johnson failed to present sufficient evidence in support of her claims.
Because the evidence in this Case was presented ore tenüs, our standard of review for this issue is as follows:
“‘“‘[W]hen a trial court hears .ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
*916 Initially, we note that Johnson appears to argue that the EEOC’s letter of determination is dispositive of this case. Johnson states that “[t]he EEOC found [the] City and its agents retaliated against [Johnson].” Johnson’s brief, at p. 33. Johnson appears to argue that, based on the EEOC’s letter of determination, the circuit court must have exceeded its discretion in ruling in favor of the City. However, Johnson has provided this Court with no authority indicating that the conclusion reached in the EEOC’s letter of determination is binding on the circuit court. In fact, we have found caselaw contrary to Johnson’s position. The United States Court of Appeals for the Eleventh Circuit stated the following in Moore v. Devine, 767 F.2d 1541, 1551 (11th Cir.1985), modified on other grounds, 780 F.2d 1559 (11th Cir.1986):
“If, as the Blizard [v. Fielding, 572 F.2d 13 (1st Cir.1978),] court points out, a court is not obliged to refer to EEOC findings in its opinion, it certainly is not required to address EEOC findings. This reasoning is consistent with Smith v. Universal Services, Inc., 454 F.2d 154 (5th Cir.1972) in which the court stated:
“ ‘It is not to be denied that under Title VII, the action of the EEOC is not agency action of a quasi-judicial nature which determines the rights of the parties subject only to the possibility that the reviewing courts might conclude that the EEOC’s actions are arbitrary, capricious or an abuse of discretion. Instead, the civil litigation at the district court level clearly takes
on the character of a trial de novo, completely separate from the actions of the EEOC. It is thus clear that the report is in no sense binding on the district court and is to be given no more weight than any other testimony given at trial.’ .
“Id. at 157 (emphasis added) (citations omitted). The Fifth Circuit recently cited Smith when it concluded that ‘EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination.... ’ McClure v. Mexia Independent School District, 750 F.2d 396, 400 (5th Cir.1985).”
Johnson’s argument is not supported with any legal authority and is not persuasive.
We now consider the merits of Johnson’s arguments that the City retaliated against her in violation of Title VII and the ADA. The Eleventh Circuit has set forth the applicable law, as follows:
“To establish a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a),1 a plaintiff must show ‘that (1) [he] engaged in ... statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) there is a causal [connection] between the two events.[5]’ Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir.2000). If ‘a plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant’ to produce ‘legitimate reasons for the adverse employment action.’ Id. at 507 n. 6 *917 (internal quotation marks omitted). If the defendant does so, the plaintiff must show that the reasons the defendant gave were pretextual. Id.
“ ^itle VII makes it unlawful for employers ‘to discriminate against ... [an] employee[] or applicant ] for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.’ 42 U.S.C. § 2000e-3(a).”
Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 715 (11th Cir.2002).
It is undisputed that Johnson was engaged in a statutorily protected activity. See Saffold v. Special Counsel, Inc., 147 Fed.App’x 949, 951 (11th Cir.2005)(not selected for publication in the Federal Reporter )(“Title VII protects individuals who have filed formal EEOC complaints and individuals who have filed, informal complaints internally to their supervisors. Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 716 n. 2 (11th Cir.2002).”).
Johnson’s arguments appear to focus on the second prong of the above test;. she appears to argue that the City committed adverse employment actions against her. The Eleventh Circuit has set forth the following concerning what constitutes an adverse employment action:
“We have stated that ‘not all conduct by an employer negatively affecting an employee constitutes adverse employment action.’ Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir.2001), and that to prove an adverse employment action ‘an employee must show a serious and material change in the terms, conditions, or privileges of employment.’ Id. ‘Moreover, the employee’s subjective view of the significance and adversity of the employer’s action is not controlling; the employment action must be-materially adverse as viewed by a reasonable person in the circumstances.’ Id. at 1239.”
Wallace v. Georgia Dep’t of Transp., 212 Fed.App’x 799, 801 (11th Cir.2006)(not selected for publication in the Federal Reporter). Similarly, the Supreme Court of the United States stated that an adverse employment action is usually “a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.” Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).
Johnson does set forth numerous facts in. this section of her brief, but she does not provide any analysis as to whether those facts constitute an adverse employment action. Other than general caselaw setting forth the applicable standard, Johnson does not provide this Court with any caselaw supporting- her arguments that the particular actions taken by the City in this case constitute adverse employment actions. We will attempt to make some sense of Johnson’s brief and give a brief analysis of her unsupported arguments.
First, Johnson mentions her 2010 unsatisfactory-performance rating. We assume that Johnson is arguing that her unsatisfactory-performance rating, constituted an adverse employment action. Johnson states that the unsatisfactory-performance rating “would prevent [her] from receiving merit raises and factor into denying- her promotional opportunities.... ” Johnson’s brief, at p. 33. Johnson does not argue that the unsatisfactory-performance rating actually did prevent her from *918 receiving a raise or a promotion. In fact, Johnson has not directed this Court’s attention to anything in the record indicating that Johnson was denied a raise or a promotion based on the unsatisfactory-performance rating. The City notes this in its brief and argues that Johnson’s unsatisfactory-performance rating did not constitute an adverse employment action, in part, because it did not cause Johnson to lose “any economic benefits.” The City’s brief, at pp. 15-16. Furthermore, Johnson’s unsatisfactory-performance rating was later changed to satisfactory, thereby eliminating any potential harm. Accordingly, Johnson has failed to demonstrate that she suffered an .adverse employment action.
Moreover, Johnson has not alleged that the unsatisfactory-performance rating, which was subsequently changed to satisfactory, was causally connected to her filing of the EEOC complaint. Further, the City has provided legitimate, nonretali-atory reasons for Johnson’s initial unsatisfactory rating: Johnson’s failure to follow instructions, her inability, to get-along with other City employees, citizen complaints about Johnson, and poor work performance. • Johnson provides no convincing argument that the City’s nonretaliatory reasons were pretextual. Therefore, Johnson has not demonstrated that the circuit court’s judgment is palpably erroneous or manifestly unjust in this regard.
Johnson next appears to argue that the City’s alleged failure to accommodate her toe injury was an adverse employment action.[6] However, Johnson has failed to demonstrate how the City refused to accommodate her toe injury. In fact, as set forth above, Johnson was permitted to wear her physician-prescribed shoes, even though they were against the City’s dress code for employees, until her toe fully healed. Accordingly, the facts do not support Johnson’s allegation that she was subject to an adverse employment action in this regard. Moreover^ the City also provided a legitimate, nonretaliatory reason by explaining that Washington was initially reluctant to' allow Johnson to wear the physician-prescribed shoes because they violated the City’s dress code; Johnson has not demonstrated that the City’s reason is pretextual. Therefore, Johnson has failed to demonstrate that the circuit court’s judgment is palpably erroneous or manifestly unjust in this regard.
Johnson also ' appears to' argue that Washington’s attempt to contact her doctor’s office in order to confirm' Johnson’s offered reasons for being absent from work was an' adverse employment action. We note that Johnson does not indicate whether she believes that Washington’s actions weré done in retaliation for her filing her EEOC complaint or for *919 her alleged disability. We would assume that Johnson is alleging that Washington’s contacting her doctor’s office was in retaliation for her alleged disability. Johnson has not offered any explanation as to why she believes Washington’s actions amounted to an adverse employment action. Regardless, even if Washington’s actions were considered to be an adverse employment action that was causally connected to Johnson’s disability, a legitimate, nonreta-liatory reason for ■ contacting Johnson’s doctor appears in the record: Washington sought to verify Johnson’s reason for being absent from work for a week. Johnson did not present any evidence demonstrating that the City’s reason was a pretext for discrimination. Therefore, Johnson has failed to demonstrate that the circuit court’s judgment is palpably erroneous or manifestly unjust in this regard.
Inexplicably, Johnson does not argue that Washington’s directive to Johnson to stop filing EEOC complaints against him constituted an adverse employment action. The only reference Johnson makes to this event in the argument section of her brief before this Court is to say that the circuit court “heard testimony where it was clear that ... Johnson was in fear of Washington....” Johnson’s brief, at p. 39. The only reason we know Johnson’s above vhgue sentence is a reference to Washington’s directive to her to stop filing EEOC complaints is the citation to the portion of the reporter’s transcript containing Johnson’s trial testimony about the incident. Johnson does not make any argument, however, that Washington’s actions constituted an adverse employment action, and we cannot raise that argument for her. See Ex parte AIG Baker Orange Beach Wharf, L.L.C., 12 So.3d 1204, 1208-09 (Ala.2009) (“ ‘ “ ‘[W]e cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.’ ” ’ Horn v. Fadal Machining Ctrs., LLC, 972 So.2d 63, 80 (Ala.2007) (quoting University of South Alabama v. Progressive Ins. Co., 904 So.2d 1242, 1247-48 (Ala.2004), quoting in turn Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992)).”). .
In summary, Johnson has failed to demonstrate that the circuit court’s judgment in favor of the City on the merits of Johnson’s retaliation claims against the City is palpably erroneous or manifestly unjust. Although the evidence indicates that Johnson and Washington had a contentious work relationship, Johnson has not made any convincing argument that the City took an adverse employment action against her. Johnson has not presented any evidence indicating that she was denied pay raises or promotions. In fact, Johnson has been paid throughout all times relevant to this case and even offered a lateral job transfer from Washington’s supervision. Accordingly, we affirm the circuit court’s judgment in favor of the City on Johnson’s retaliation claims.

B. Denial of Johnson’s Motion for a Continuance and Her Postjudgment Motion

As set forth above, the City filed a motion for attorney fees, which was set for a hearing. Subsequently, Johnson filed a pro se motion for a new trial, which was set to be heard at the same hearing the City’s motion for attorney fees was to be heard. Johnson filed a motion for a continuance of the hearing on the City’s requests for court, costs and attorney fees and her motion for a new trial; the circuit court denied Johnson’s motion, and it subsequently denied her motion for a new trial. Johnson argues that the circuit court exceeded its discretion by denying her motion for a continuance. Johnson also argues.that the circuit court exceeded *920 its discretion in denying her motion for a new trial.
Johnson’s arguments for both motions fail for the same reason. Other than a general citation to Rule 59(a), Ala. R.Civ. P., Johnson has failed to support her assertions that the circuit court exceeded its discretion in denying her postjudgment motions with any legal authority. In Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007), this Court stated:
“Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ Further, ‘it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.’ State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005) (citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)). This is so, because ‘“it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ’ Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
Therefore, we will not consider Johnson’s arguments set forth above.

C. Attorney Fees

Johnson raises several arguments concerning the circuit court’s award of attorney fees. First, Johnson argues that she was not properly served notice of the City’s motion seeking attorney fees. Johnson cites no authority in support of her argument; thus, we need not consider it. See Rule 28(a)(10), Ala. R.App. P., and Jimmy Day, supra.
[13] Moreover, even if we were to consider the merits of Johnson’s argument, it is not persuasive. As set forth above, the City filed its motion for attorney fees on October 15, 2014, at 12:00 p.m.; the circuit court set the motion for a hearing to be held on October 31, 2014. It was not until 2:36 p.m. on the same day, October 15, 2014, that Harred, one of Johnson’s three attorneys, filed a motion to withdraw as Johnson’s counsel; the circuit court did not grant Harred’s motion to withdraw until October 17, 2014. Also on October 17, 2014, McCants and Bennitt, Johnson’s remaining attorneys, filed motions to withdraw as Johnson’s counsel; the circuit court granted McCants’s and Bennitt’s motions to withdraw as counsel on October 21, 2014. The attorneys’ motions to withdraw each indicated that Johnson had fired them. The circuit court later moved the scheduled October 31, 2014, hearing to November 21, 2014.
At the time the City filed its motion for attorney fees, Johnson was represented by three attorneys. As the City notes in its brief, under Rule 5(b), Ala. R. Civ. P., the City was required to serve only Johnson’s attorneys, not Johnson herself, and that service was made complete “on transmission of the electronic document.” Johnson does not dispute the fact that her attorneys were properly served with the City’s motion for attorney fees before they withdrew as her counsel. Johnson’s argument, even when considered, is not persuasive.
Johnson also argues that “[i]t was inappropriate for the [circuit] court to grant [Johnson’s attorneys] a complete withdrawal within days” [7] of the hearing on *921 the City’s motion for attorney fees. Johnson’s brief, at p. 23. However, once again, Johnson cites no authority in support of her argument; thus, we need not consider it. See Rule 28(a)(10), Ala. R.App. P., and Jimmy Day, supra.
Moreover, even if we were to consider Johnson’s unsupported argument, it is not persuasive. In Hale v. Larry Latham Auctioneers, Inc., 607 So.2d 154, 155 (Ala.1992), this Court stated:
“Whether to permit an attorney to withdraw from representing a client is a matter resting within the sound discretion of the trial court. Thomas v. Southeast Alabama Sickle Cell Ass’n, Inc., 581 So.2d 845 (Ala.1991). In Steele v. Gill, 283 Ala. 364, 369, 217 So.2d 75, 80 (1968), this Court, acknowledging that there is ‘no hard and fast rule’ to be applied in determining whether a trial court has abused its discretion, wrote:
“ ‘[Discretion is abused whenever, in its exercise, the court has acted arbitrarily without the employment of its conscientious judgment, or has exceeded the bounds of reason in view of all the circumstances, or has so far ignored recognized rules or principles of law or practice as to [cause] substantial injustice.’ ”
Johnson’s attorneys withdrew from representing her because Johnson fired them.. The circuit court did not require Johnson to then appear pro se at the scheduled October 31, 2014, hearing but continued the hearing to November 21, 2014. The circuit court gave Johnson an entire month to obtain new counsel if she so chose. Johnson has not demonstrated that the circuit court exceeded its discretion in allowing her attorneys to withdraw.
Johnson also argues that the circuit court erred by refusing her request to conduct the November 21, 2014, hearing on the record. Johnson cites no authority for this argument; thus, we will not consider it. See Rule 28(a)(10), Ala. R.App. P., and Jimmy Day, supra.
Next, Johnson challenges the merits of the circuit court’s award of attorney fees. The Eleventh Circuit has held that the review of a trial court’s award of attorney fees in a Title VII case is “to determine whether [the trial court] abused its discretion.” Turner v. Sungard Bus. Sys., Inc., 91 F.3d 1418, 1422 (11th Cir.1996) (citing Sullivan v. School Bd. of Pinellas Cnty., 773 F.2d 1182, 1188 (11th Cir.1985)). In Shepherd v. Summit Management Co., 794 So.2d 1110, 1115 (Ala.Civ.App.2000), the Alabama Court of Civil Appeals set forth the following applicable standard for reviewing a trial court’s award of attorney fees in a Title VII case:
“The trial court’s authority awarding attorney fees is provided in 42 U.S.C. § 2000e-5(k):
“ ‘In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney’s fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.’
“The United States Supreme Court' discussed the limits on the trial court’s discretion in awarding attorney fees under § 2000e-5(k), in Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).... After providing a detailed analysis of *922 analogous provisions in other federal statutes and of the legislative history of § 2000e-5(k), the Court [in Christians-burg ] stated:
“ ‘[A] plaintiff should not be assessed his opponent’s attorney’s fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney’s fees incurred by the defense.’.
“434 U.S. at 701, 98 S.Ct. 878, The Court also noted some particular considerations for applying these standards:
“‘In applying these criteria, it is important that a district court resist the understandable, temptation, to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one’s belief that he has been the victim of discrimination, no matter how meritorious one’s claim may appear at the outset, the course of litigation is rarely predictable.' Decisive facts may not emerge until discovery-or trial. The law may change or clarify in the midst of litigation. . Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ■ ground for bringing suit.’
“Id. at 700-01, 98 S.Ct. 873.”
We note that the Eleventh Circuit held in Bruce v. City of Gainesville, Ga., 177 F.3d 949, 951 (11th Cir.1999), that the test enunciated in Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), applies in assessing attorney fees under the ADA.
The circuit court in the present case determined that Johnson’s claims were “ ‘frivolous, unreasonable or groundless.’ ” In Shepherd, the Alabama Court of Civil Appeals stated:
“Standards for assessing whether a federal civil-rights claim is frivolous, under the principles of Chrlstiansburg, were set out in Sullivan v. School Board of Pinellas County, 773 F.2d 1182 (11th Cir.1985). In that case an assistant school superintendent sued her school board under the Civil Rights Act, alleging that her dismissal was based on her coworker’s prejudices against her sex and religion. The Eleventh Circuit first discussed the conclusions of earlier cases in determining whether a claim was frivolous, and then noted the important general factors to be considered in the usual case:
“ ‘Cases where findings of “frivolity” have been sustained typically have been decided in the defendant’s favor on a motion for summary judgment or a Fed.R.Civ.P. 41(b) motion for involuntary dismissal. In these cases, the plaintiffs did not introduce any evidence to support their claims. E.g., Beard v. Annis, 730 F.2d 741 (11th Cir.1984); Jones v. Dealers Tractor and Equipment Co., 634 F.2d 180 (5th Cir.1981); Church of Scientology of California v. Cazares, 638 F.2d 1272 (5th Cir.1981); Harris v. Plastics Manufacturing Co., 617 F.2d 438 (5th Cir.1980). In cases Where the plaintiffs introduced evidence sufficient to support their claims, findings of frivolity typically do not stand. E.g., White v. South Park Independent School *923 District, 693 F.2d 1163 (6th Cir.1982); Plemer v. Parsons-Gilbane, 713 F.2d 1127 (5th Cir.1983).
“‘Factors considered important in determining whether a claim is frivolous also include: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. See, e.g., E.E.O.C. v. Kimbrough Investment Co., 703 F.2d 98, 103 (5th Cir.1983); Jones [v. Texas Tech Univ.], 656 F.2d [1137,] 1146 [ (5th Cir.1981) ]. While these general guidelines can be discerned from the case law, they are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis.’
“773 F.2d at 1189.”
794 So.2d at 1116.
On appeal, Johnson argues that her claims were not frivolous, unreasonable, or groundless because, she sáys, her case was not decided in the City’s favor on a motion for a summary judgment. As set forth above, the circuit court did not rule on the City’s summary-judgment motion until it purported to do so after the bench trial. Later, in its order granting the City attorney fees, the circuit court explained that it denied the City’s summary-judgment motion because it was- filed within three weeks of the bench trial., From this explanation, it appears that the circuit court did not deny the City’s summary-judgment motion after a consideration of the merits but because it did not have time to consider the merits before the bench trial; In fact, Johnson did not file .a response to the City’s summary-judgment motion until September 29, 2014, just three days before the bench trial. The City then filed its reply to Johnson’s response on October 1, 2014, the '■ day before the bench trial. Therefore, when all the relevant facts concerning this factor are considered, the fact that the City did not prevail at the summary-judgment stage of the proceedings neither supports nor detracts from the circuit court’s finding that Johnson’s claims were frivolous. Instead, the circuit court simply did not rule on the City’s summary-judgment motion before the trial on the merits began. •
The next factor to consider is whether Johnson established a prima facie case. As' thoroughly discussed above, Johnson has not demonstrated to this Court that she established a prima facie case for her claims against the City. Moreover, it appears that the circuit court denied the City’s motions for a JML not because Johnson made a prima facie case, but to give her the “full opportunity” to be heard. Accordingly, consideration of this factor supports the circuit court’s finding of frivolity.
The next factor to consider is whether the defendant offered to settle. The United States District Court for the Southern District of Florida provided the following summary of the applicable Eleventh Circuit cases in Bates v. Islamorada, Village of Islands, No. 04-10114-CIV (S,D.Fla., July 23, 2007)(no‘t selected for publication):
“The Eleventh Circuit ... has explicitly held that the fact a defendant did not offer to settle generally dictates in favor of a feé" award to that defendant, while the fact that a defendant offered to set-tie, with one caveat, generally dictates against a fee award to that defendant. See, e.g., Bonder v. Mobile Energy Servs. Co., L.L.C., 246 F.3d 1303, 1305 (11th Cir.2001); Sayers v. Stewart Sleep Ctr., Inc., 140 F.3d 1351, 1354 (11th Cir.1998) (‘Furthermore, under the standards enunciated in Sullivan [v. School Bd. of Pinellas County, 773 F.2d 1182
*924 (11th Cir.1985) ], [defendant’s] settlement offer should have been a factor weighing in [plaintiffs] favor.’); Jerelds v. City of Orlando, 194 F.Supp.2d 1305, 1311 (M.D.Fla.2002) (‘Second, since the Defendants did not offer Plaintiffs a promotion or a monetary settlement, this factor weighs in favor of the Defendants.’). It appears that the only caveat to the latter proposition that the Eleventh Circuit has stated is that ‘the amount of the offer is a necessary factor in evaluating whether a settlement offer militates against a determination of frivolity.’ Quintana v. Jenne, 414 F.3d 1306, 1310 (llth Cir.2005).”
In the present case, the City offered to settle Johnson’s claims for $3,000. This fact weighs in' Johnson’s favor that her claims were not frivolous. However, the mere fact that the City offered to settle the case is not, in and of itself, dispositive. As set forth above, the amount of the offer is also a necessary factor in evaluating whether the settlement offer weighs against a determination of frivolity. See Lawver v. Hillcrest Hospice, Inc., 300 Fed. Appx. 768, 774 (11th Cir.2008)(not selected for publication in the Federal Reporter )(“A settlement offer does not automatically bar a defendant from receiving attorney’s fees, and the amount of the offer must be considered in determining whether the offer militates against a finding of frivolity.”). Johnson states the following in her brief before this Court concerning the amount of the City’s settlement offer:
“Let’s state something for a fact: The Lawyers representing the City in this matter are some of the best Lawyers in this State. This fact is further proved by their offer of judgment as a tactical maneuver. Certainly, the amount of money offered and now a part of the record is one they knew would be rejected — so it was a win-win position for them to take and one they are trying to exploit at this time.”
Johnson’s brief, at p. 30. Johnson characterizes the City’s settlement offer as so low that the City knew that Johnson would not accept it. We have no reason to doubt Johnson’s characterization of the City’s settlement offer. Despite Johns’s characterization of the City’s settlement offer, this factor actually supports the circuit court’s finding of frivolity.
The last factor to consider is whether the circuit court dismissed the case before trial or held a full-blown trial on the merits. The circuit court in this case did, in fact, hold a full-blown bench trial on the merits of Johnson’s claims. In fact, as Johnson points out, the circuit court even denied the City’s motions for a JML. The circuit court explained that it “denied the City’s motions for judgment as a matter of law in order to give Johnson a full opportunity to be heard on the trial date. It was clear very early in the trial that Johnson’s claims were baseless.” The circuit court clearly indicates that the full bench trial was not necessary to determine the merits of Johnson’s claims. However, the fact remains that a full-blown trial on the merits was held. Therefore, this factor weighs against the circuit court’s judgment that Johnson’s claims were frivolous.
We note that the Eleventh Circuit has stated that, “[w]hile these general guidelines can be discerned from the case law, they are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis.” Sullivan, 773 F.2d at 1189. Based on the foregoing analysis, we conclude that the circuit court did not abuse its discretion in determining that Johnson’s claims were frivolous. The Eleventh Circuit has also stated that, “[i]n determining whether a suit is frivolous, ■ ‘a [trial] court must focus on the question whether the case is *925 so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.’ ” Sullivan, 773 F.2d at 1189 (quoting Jones v. Texas Tech Univ., 656 F.2d 1137, 1145 (5th Cir.1981)). Johnson has not put forth any argument demonstrating that her claims have arguable merit; Johnson’s claims appear to be groundless and without foundation. The claims filed in this case against the City are the latest of Johnson’s several failed EEOC complaints and lawsuits against the City over the course of the past several years. Johnson has not set forth any argument convincing us that the circuit court abused its discretion in determining that her claims against the City are frivolous.
Having concluded that the circuit court properly determined that Johnson’s claims are frivolous and, thus, that the City is entitled to attorney fees under 42 U.S.C. § 2000e-5(k), the next consideration is whether the attorney fees awarded by the circuit court were reasonable. In Perry v. Orange County, 341 F.Supp.2d 1197, 1207-08 (M.D.Fla.2004), the United States District Court for the Middle District of Florida set forth the following summary of applicable law concerning this inquiry:
“Historically, the federal courts have analyzed demands for attorneys’ fees pursuant to Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974). Johnson set forth twelve factors to be considered in calculating a fee award.3 The United States Court of Appeals for the Eleventh Circuit has consistently refined calculation of awards of attorneys’ fees to comport with decisions of the United States Supreme Court. Norman v. Housing Authority, 836 F.2d 1292, 1299 (11th Cir.1988). Norman adopted the lodestar approach for calculating attorneys’ fees.
The lodestar approach presumptively incorporates the twelve factors adopted in Johnson, 488 F.2d 714. Norman, 836 F.2d at 1298-99. The Eleventh Circuit applies the lodestar approach of Norman in determining a reasonable attorneys’ fee. See Camden I Condominium Assoc., Inc. v. Dunkle, 946 F.2d 768, 772 (11th Cir.1991); see also Burlington v. Dague, 505 U.S. 557, 562,112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Simply stated, the lodestar is the product of the number of reasonable hours expended and the reasonable hourly rate. Burlington v. Dague, 505 U.S. 557, 559-60, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) citing Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).
“The lodestar approach also governs the attorneys’ fees analysis under fee-shifting statutes. City of Burlington v. Dague, 505 U.S. 557, 561-62, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (lodestar figure has become the guiding light of our fee-shifting jurisprudence). This Court therefore applies the Norman lodestar approach in determining the parties’ request for attorneys’ fees.

“1. Reasonable Hourly Rate

“The Court must first determine the reasonable hourly rate. Duckworth v. Whisenant, 97 F.3d 1393 (11th Cir.1996); Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir.1994); Norman v. Housing Authority, 836 F.2d 1292, 1299 (11th Cir.1988). The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation. Norman, 836 F.2d at 1299. The party seeking attorneys’ fees bears the burden of producing ‘satisfactory evidence that the requested rate is in line *926 with prevailing market rates,’ which normally requires 'more than the affidavit of the attorney performing the work.’ Loranger, 10 F.3d at 781, citing Norman, 836 F.2d at 1299. The court may consider direct evidence of rates for similar services or opinion evidence about rates. Norman, 836 F.2d at 1299.
“The Eleventh Circuit looks to skill as the ultimate determinate of compensation level because experience and reputation are a mirror image of skill. Norman, 836 F.2d at 1300. Skill is evidenced by an attorneys’ initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency. Norman, 836 F.2d at 1300-1301. Organization means that counsel plans effective discovery devices and does not use them randomly or for the mere purpose of going through established routines. Efficiency means doing exactly what needs to be done in a minimum time. Norman, 836 F.2d at 1301. Legal skill, therefore, correlates to a knowledge of both trial practice and substantive law. Norman, 836 F.2d at 1301. Although an attorney who must familiarize himself or herself with either aspect of practice may prove exemplary as an advocate, he or she does not have a right to claim comparable skill to attorneys whose first actions are directed at the finer points of the ease. Norman, 836 F.2d at 1301. Proficiency should yield efficiency, and the district court has ample discretion to discount the import of counsel’s expertise. Varner v. Century Finance Company, Inc., 738 F.2d 1143, 1149 (11th Cir.1984). No two attorneys possess the same skill, therefore the Court must look to the range provided by the evidence, and interpolate a reasonable market rate. Norman, 836 F.2d at 1300. In summary, the Court determines a reasonable rate by assessing the range of fees established in the marketplace, as modified by reference to an individual attorney’s skill. Norman, 836 F.2d at 1301; e.g., Duckworth, 97 F.3d at 1396.

“2. Reasonable Hours Expended

“The second step in determining the lodestar is to assess the reasonable number of hours expended in the litigation. Norman, 836 F.2d at 1302. Inquiry into the reasonable number of hours focuses on the exercise of ‘billing judgment’— exclusion of those hours not reasonably billable to a client irrespective of counsel’s skill[;] therefore the Court must deduct for redundant hours. Norman, 836 F.2d at 1301-02, citing Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A court must not consider an attorney’s skill at this stage as this would constitute a double penalty — the rate would first be decreased and the hours would then be lowered. Norman, 836 F.2d at 1301.
“The fee applicant bears the burden of documenting the appropriate number of hours. Norman, 836 F.2d at 1303, citing Hensley, 461 U.S. at 437, 103 S.Ct. 1933; United States v. Blue Cross and Blue Shield of Florida, Inc., 882 F.Supp. 166, 170 (M.D.Fla.1995). Generalized statements concerning reasonableness are of little or no assistance to the Court, instead proof of the hours dedicated to litigation and any .corresponding objections must be made with sufficient specificity. Duckworth, 97 F.3d at 1397-98; Norman, 836 F.2d at 1301. Throughout the calculation of the lodestar, the Court remains cognizant that it is itself an expert on the question, and may consider the request in light of its own knowledge and experience with or without the aid of witnesses as to value or hours dedicated to litigation. Loran- *927 ger, 10 F.3d at 781; Norman, 836 F.2d at 1303.

it

“3Those twelve factors are: (1) the time and labor, required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;' (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the ‘undesirability’ of the case; (11) the na- ■ ture and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-9.[8]”
In the present case, Johnson, argues that the circuit court has failed to allow meaningful appellate review of its award of attorney fees because the circuit court’s order did not set forth the reasons supporting its decision and how it calculated the attorney fee. Johnson is correct. The extent of the circuit court’s reasoning for granting the City’s requested attorney fees is simply that “[t]he City submitted proof that its reasonable attorney fees for defending this case equaled $116,892.50.” Lacking from the circuit court’s order is any of the analysis required under the extensive authority set forth above. In Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1304 (11th Cir.1988), the Eleventh Circuit stated that “[t]he [trial] court’s order on attorney’s fees must allow meaningful review — the [trial] court must articulate the decisions it made, give principled reasons for those decisions, and ' shów its calculation. Adams v. Mathis, 752 F.2d 553, 554 (11th Cir.1985).” The circuit court has failed to do so. Accordingly, we reverse the judgment insofar as it set the amount of attorney fees and remand the case for the circuit court to enter an order awarding attorney fees consistent with the authority set forth above.

Conclusion

Based on the foregoing, we affirm the circuit court’s judgment on the merits and its denial of Johnson’s postjudgment motions. Further, we affirm the circuit court’s decision to award the City attorney fees; however, we reverse the judgment insofar as it set the amount of attorney fees awarded by the circuit court and remand the case for the circuit court to enter a new order awarding attorney fees, setting forth the reasons supporting its deci *928 sion and how it calculated the attorney fees pursuant to the precedent set forth in this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
STUART, BOLIN, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and MURDOCK and SHAW, JJ., concur in the result.

. Although the parties do not explain this particular incident, it appears that Washington contacted Johnson’s doctor in order to verify the reasons Johnson offered for being absent from work.

. We note that, before filing the EEOC complaint, Johnson had filed a lawsuit against the City in the United States District Court for the Southern District of Alabama alleging claims of race and gender discrimination and retaliation under Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983. On April 29, 2011, the district court granted a motion filed by Johnson to voluntarily dismiss all of her claims against the City; all of Johnson’s claims except for her retaliation claim under Title VII were dismissed with prejudice.

. We note that the City’s summary-judgment motion was docketed on September 15, 2014, and was set to be heard at an October 2, 2014,'hearing. The circuit court also'set the matter for a bench trial to occur on the same day. ■

. We note that Johnson also appears to argue that she was discriminated against based on her gender. However, Johnson did not assert a gender-discrimination claim in the circuit court, only retaliation claims under Title VII and the ADA. Therefore, any gender-discrimination arguments asserted by Johnson are not properly before this Court and will not be considered. See Beavers v. County of Walker, 645 So.2d 1365, 1372 (Ala.1994) (“[I]t- is a well-settled rule that an appellate court's review is limited to only those issues that were raised before' the trial court. Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992).... Issues raised for the first time on appeal cannot be considered. Andrews, supra....").

. Concerning the third prong of the above test, the Eleventh Circuit has stated:
“ ‘To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.’ Gupta [v. Florida Bd. of Regents ], 212 F.3d [571,] 590 [(11th Cir.2000)]. 'Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated.’ Bass [v. Board of Cnty. Comm’rs ], 256 F.3d [1095,] 1119 [ (11th Cir.2001) ].’’
Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 716-17 (11th Cir.2002).

. An ADA retaliation claim is analyzed under the same framework used to analyze a Title VII retaliation claim:
“The ÁDA also provides that ‘no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA].’ 42 U.S.C. § 12203(a). This provision creates a prohibition on retaliation under the ADA that is similar to Title VII’s prohibition on retaliation. Accordingly, we assess ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII. McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1075-77 (11th Cir.1996) (relying on Title VII jurisprudence to interpret meaning of ADA provisions in a retaliation case), cert. denied, 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1028 (1997).”
Stewart v. Happy Herman’s Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir.1997). Accordingly, we will use the same framework to analyze Johnson’s ADA retaliation claim as used to analyze Johnson’s Title VII retaliation claim.

. We note that Johnson overstates the facts in making this argument. The circuit court did *921 not allow Johnson’s attorneys to withdraw "within days” of the hearing, but one full month before the hearing.

. Further, in Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 917 (11th Cir.1982), the Eleventh Circuit stated: .
"In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), we identified twelve factors which a court should consider in awarding attorney’s fees to a prevailing Title VII plaintiff. In Jones v. Dealers Tractor & Equipment Co., 634 F.2d 180 (5th Cir.1981), we affirmed the district court's use of the Johnson factors to determine the amount of an attorney’s fee award to a prevailing Title VII defendant. Although. the losing party’s ability to pay is not among the Johnson factors, we do not believe that Johnson and Jones bar consideration of the plaintiff’s limited ability to pay as one factor in .calculating an attorney’s fees award, to a prevailing Title VII defendant. In Johnson, our focus was on the situation of the prevailing plaintiff; indeed, one of the factors we listed, the undesirability of the case, is not applicable to the situation of the prevailing defendant. Therefore, that we did not include among the Johnson factors the losing party's ability to pay — a consideration uniquely pertinent to the losing plaintiff — is of little moment in the present context. Nor do we read our unelaborated affirmance of the application of the Johnson guidelines to the prevailing defendant situation in Jones to preclude the adjustment of those guidelines under consideration here.”